750 So.2d 633 (1999)
Patricia SEIFERT, Petitioner,
v.
U.S. HOME CORPORATION, et al., Respondents.
No. 91,821.
Supreme Court of Florida.
November 18, 1999.
*635 Poses & Halpern, P.A., Miami, Florida; and Sharon L. Wolfe and Nancy C. Ciampa of Cooper & Wolfe, P.A., Miami, Florida, for Petitioner.
Fredric S. Zinober of Tew, Zinober, Barnes, Zimmet & Unice, Clearwater, Florida, for Respondents.
ANSTEAD, J.
We have for review U.S. Home Corp. v. Seifert, 699 So.2d 787 (Fla. 5th DCA 1997), based upon express conflict with the opinion in Terminix International Co. v. Michaels, 668 So.2d 1013 (Fla. 4th DCA 1996).[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we quash the decision below and approve the decision in Michaels. We hold that an agreement to arbitrate in a purchase and sale agreement does not necessarily mandate arbitration of a subsequent and independent tort action based upon common law duties.

MATERIAL FACTS
This is a wrongful death action. At issue is whether the terms of an arbitration provision in a contract for the sale and purchase of a house require the wrongful death action to be arbitrated. Petitioner Patricia Seifert and her husband Ernest Seifert, now deceased, contracted with U.S. Home Corporation ("U.S.Home") for the construction of a house. After the Seiferts moved into the home, the Seiferts' car was left running in the garage, and the air conditioning system located in the garage picked up the carbon monoxide emissions from the car and distributed them into the house, killing Mr. Seifert. Patricia Seifert, as personal representative of her husband's estate, sued U.S. Home alleging claims for strict liability, negligence, and breach of express and implied warranties. Thereafter, the strict liability and warranty claims were dismissed.
U.S. Home moved to submit the negligence claim for wrongful death to arbitration based on an arbitration provision in the purchase and sale contract with the Seiferts which states:
13. ARBITRATION. Any controversy or claim arising under or related to this Agreement or to the Property (with the exception of "consumer products" as defined by the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. Section 2301 et seq., and the regulations promulgated under the Act) or with respect to any claim arising by virtue of any representations alleged to have been made by the Seller or Seller's representative, shall be settled and finally determined by mediation or binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. Section 1-14) and similar state statutes and not by a court of law. The claim will be first mediated in accordance with the Commercial or Construction Industry Mediation Rules, as appropriate, of the American Arbitration Association. If not resolved by mediation, the claim will be settled in accordance with the Commercial or Construction Industry Arbitration Rules, as appropriate, of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction of the matter, provided, however, that if Seller's warranty plan establishes an alternative dispute resolution procedure, a claim covered by Seller's warranty will be determined in accordance with that alternative procedure *636 prior to submission to binding arbitration, if necessary. Unless otherwise provided by law or Seller's warranty plan, the cost of initiating any of the foregoing proceedings shall be borne equally by Seller and Buyer.
The trial court denied U.S. Home's request for arbitration and it appealed. The Fifth District reversed the trial court's order and held the action must be decided in accord with the arbitration provision of the contract.

LEGAL ARGUMENT

Arbitrability
Under both federal statutory provisions and Florida's arbitration code, there are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Terminix Int'l Co. L.P. v. Ponzio, 693 So.2d 104, 106 (Fla. 5th DCA 1997). The issue here relates to the first two prongs, and, of course, boils down to an issue of whether the wrongful death action is subject to arbitration.[2]

Rules of Construction
Today, arbitration provisions are common, and their use generally favored by the courts. However, because arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation. See Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir.1982); R.W. Roberts Constr. Co., Inc. v. St. Johns River Water Management Dist., 423 So.2d 630, 632 (Fla. 5th DCA 1982). Accordingly, the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily "rests on the intent of the parties." Seaboard, 690 F.2d at 1348; see also Regency Group, Inc. v. McDaniels, 647 So.2d 192, 193 (Fla. 1st DCA 1994) ("The agreement of the parties determines the issues subject to arbitration."). A natural corollary of this rule is that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate. See Seaboard Coast Line, 690 F.2d at 1352 (holding that the federal policy favoring arbitration "cannot serve to stretch a contract beyond the scope originally intended by the parties"); see also Tracer Research Corp. v. National Envtl. Servs. Co., 42 F.3d 1292, 1294 (9th Cir.1994); Miller v. Roberts, 682 So.2d 691, 692 (Fla. 5th DCA 1996) ("The general rule is that where an arbitration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration."); Regency Group, Inc., 647 So.2d at 193 ("Only those claims which the parties have agreed are arbitrable may be subject to arbitration.").

Words
At the outset, we must note that courts around the country, as well as courts here in Florida, have pronounced differing views on the interpretation of contracts and their arbitration provisions. Not surprisingly, courts have given different meaning to clauses on the basis of the actual terminology used. For example, clauses including all claims or controversies "arising out of" the subject contract have been considered by some courts to be narrow in scope; i.e., the scope of the arbitration clause is limited to those claims having some direct relation to the terms and provisions of the contract. See Mediterranean Enters., Inc. v. Ssangyong *637 Corp., 708 F.2d 1458, 1464 (9th Cir.1983); In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir.1961). Both Mediterranean and Kinoshita hold that claims alleging breach of a separate and unrelated contract, breach of fiduciary duty, and quantum meruit, none of which rely on the interpretation or performance of the contract containing the arbitration clause, are not subject to arbitration as disputes "arising out of the contract. These cases reason that where an arbitration clause refers solely to disputes or controversies "under" or "arising out of" the contract, arbitration is restricted to claims "relating to the interpretation of the contract and matter of performance." Mediterranean Enters., 708 F.2d at 1464 (quoting Kinoshita, 287 F.2d at 953).
On the other hand, the phrase "arising out of or relating to" the contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims.[3]See Southland Corp. v. Keating, 465 U.S. 1, 15 n. 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (involving claims for fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of state franchise investment law); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that contractual language "[a]ny controversy or claims arising out of or relating to this Agreement, or breach thereof" is "easily broad enough to encompass" claim for fraud in inducement of contract). The addition of the phrase "relating to" to the phrases "arising out of or "under," has been construed as broadening the scope of the arbitration provision. See American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir.1996) (characterizing phrase "arise out of or related to" as broad arbitration clause "capable of an expansive reach").
According to the Fourth Circuit in American Recovery Corp.,[4] the test for *638 determining arbitrability of a particular claim under a broad arbitration provision is whether a "significant relationship" exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute (i.e., tort or breach of contract). See id. at 93-94; cf. Bachus & Stratton, Inc. v. Mann, 639 So.2d 35, 36 (Fla. 4th DCA 1994) (upholding trial court order compelling arbitration where employee's post-employment claims involved "significant aspects" of the employment relationship). In applying this standard, the court focused on the factual allegations of the complaint to determine whether those allegations implicated the contractual agreement and hence the arbitration clause. See American Recovery Corp., 96 F.3d at 94; see also Gregory, 83 F.3d at 384 ("Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted.").

Contractual Nexus
After analyzing the governing principles surrounding the determination of whether a particular claim is subject to arbitration, and keeping in mind the general policy favoring arbitration, we believe it is fair to presume that not every dispute that arises between contracting parties should be subject to arbitration. As the prevailing case law illustrates, even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause.
Disputes arise in many and varied contexts and the mere coincidence that the parties in dispute have a contractual relationship will ordinarily not be enough to mandate arbitration of the dispute. In other words, the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one "arising out of or relating to" the agreement. See Armada Coal Export, Inc. v. Interbulk, Ltd., 726 F.2d 1566, 1568 (11th Cir.1984); Necchi S. p. A. v. Necchi Sewing Machine Sales Corp., 348 F.2d 693, 698 (2d Cir. 1965); Hersman, Inc. v. Fleming Cos., Inc., 19 F.Supp.2d 1282, 1287 (M.D.Ala. 1998), aff'd, 180 F.3d 271 (11th Cir.1999). These cases hold that for a tort claim to be considered "arising out of or relating to" an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself. See Hersman, 19 F.Supp.2d at 1286-87; see also Koullas v. Ramsey, 683 So.2d 415, 417 (Ala.1996); Dusold v. Porta-John Corp., 167 Ariz. 358, 807 P.2d 526, 530 (Ct.App.1990).
In Hersman, for example, the plaintiff, Hersman, Inc. ("Hersman"), owned and operated a Piggly Wiggly Supermarket. Acting upon representations by representatives of Fleming Companies, Inc. (Fleming), a wholesale supplier for Hersman, Hersman agreed to build a new store and shopping center if Fleming provided its expertise and oversight for the project. Based on Fleming's representations, Hersman contracted with an architect for the services to the shopping center development project. The standard contract provided the general duties and obligations between the owner (Hersman) and the architect. The contract also provided that Fleming, rather than Hersman, would pay the total contract amount of $27,000. All parties, including Fleming and Hersman, signed the contract. In addition to the above, the contract also contained an arbitration clause whereby "claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to ... arbitration."
Hersman subsequently filed a complaint against Fleming alleging acts of negligence and misrepresentation by Fleming concerning Hersman's shopping center project. The district court denied Fleming's *639 motion to compel arbitration, holding that the tort claims were not subject to arbitration. The court reasoned that "[t]he key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations." 19 F.Supp.2d at 1285. After considering the contractual relationship between the parties, the court found that none of Hersman's claims against Fleming implicated Fleming's duties under the contract. Indeed, the complaint did not even refer to the contract. Accordingly, the court concluded that because Hersman did not need to inquire into the architect's contract to prove its claims, and the claims did not depend on the relationship between Fleming and Hersman as set out in the contract with the architect, the tort claims against Fleming existed wholly apart from that contract and thus were not subject to its arbitration clause. Id. at 1286.
Similarly, in a setting more akin to that involved herein, the Arizona Court of Appeals in Dusold v. Porta-John Corp., 167 Ariz. 358, 807 P.2d 526 (Ct.App.1990), held that certain tort claims were not subject to arbitration, and explained:
The question whether a tort claim arising between parties who have a contractual relationship requiring that a claim "arising out of or relating to" an agreement or a breach of an agreement be subjected to arbitration is not without difficulty....
. . . .
... [T]he better-reasoned cases start with the premise that, in order for the dispute to be characterized as arising out of or related to the subject matter of the contract, and thus subject to arbitration, it must, at the very least, raise some issue the resolution of which requires a reference to or construction of some portion of the contract itself. [Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584, 359 F.2d 598 (2d Cir.1966) ]. The relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties. Armada Coal Export, Inc. v. Interbulk, Ltd., 726 F.2d 1566 (11th Cir. 1984). See also McMahon v. RMS Electronics, Inc., 618 F.Supp. 189 (S.D.N.Y. 1985) (where tort claim does not require an interpretation of the underlying contract, no arbitration of that claim is required); Popper [v. Monroe ], 673 F.Supp. 1228] at 1228 [S.D.N.Y.1987] (if defamatory statements have no material relationship to contractual relationship, no arbitration required). If such a connection to the contract is not present, tort claims between the parties could not reasonably be intended to have been subject to arbitration within the meaning of an arbitration clause requiring this method of resolution only for claims "arising out of or related to" the contract.
... If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Barmat [v. John and Jane Doe Partners A-D], 155 Ariz. [519] at 523, 747 P.2d [1218] at 1222 [1989]. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Id. Therefore, a contractually-imposed arbitration requirement... would not apply to such a claim.
Dusold, 807 P.2d at 529-31 (emphasis supplied).

Terminix International Co. v. Michaels
Petitioner relies on the Fourth District's holding in Terminix International *640 Co. v. Michaels, 668 So.2d 1013 (Fla. 4th DCA 1996), which in turn relied upon and adopted the reasoning and holding of the Arizona court in Dusold. In Terminix, the plaintiffs filed claims based on negligence and strict liability for personal injuries sustained from Terminix's alleged tortious use of ultrahazardous chemicals during insect eradication at the plaintiff's house. Terminix moved to dismiss based on an arbitration provision in the contract to provide eradication services which stated "that any controversy or claim between them [the contracting parties] arising out of or relating to the interpretation, performance, or breach of any provision of this agreement shall be settled exclusively by arbitration." The trial court denied the motion, emphasizing that arbitration "would dispense with the Michaels' right to trial by jury where it was not clear that personal injuries were subject to arbitration." Michaels, 668 So.2d at 1014.
On appeal, the Fourth District Court of Appeal affirmed the order of denial by concluding that the tort claim of the Michaels did not arise out of or relate to the "interpretation, performance, or breach of any provision of this agreement" and, therefore, such claims were not subject to the contract's arbitration provision. Following the logic of Dusold, the Fourth District explained that Terminix's duty to warn of the dangerous nature of its chemical product arose not from the terms of the eradication contract but from "a general duty imposed on the producer and distributor of hazardous chemicals." Michaels, 668 So.2d at 1015. The court reasoned that the general protection of persons was not within the subject matter of the contract, and therefore the dispute was not subject to the arbitration provision within the contract because it did not arise out of or relate to the contract. Id.

This Case
We agree with the reasoning invoked in Michaels and Dusold. In particular, we agree with the framework for analysis and holding of Dusold:
If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Barmat [v. John and Jane Doe Partners A-D], 155 Ariz. [519] at 523, 747 P.2d [1218] at 1222 [1989]. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Id. Therefore, a contractually-imposed arbitration requirement... would not apply to such a claim.
Dusold, 807 P.2d at 531. As in Dusold and Michaels, because this case involves a claim sounding in tort, i.e., negligence, we must determine whether the tort claim, as alleged in the complaint, arises from and bears such a significant relationship to the contract between the parties as to mandate application of the arbitration clause. The petitioner concedes that an action for breach of contract or of any of the warranties or other rights and obligations arising out of the contract would be subject to arbitration. However, because the wrongful death action here is predicated upon a tort theory of common law negligence unrelated to the rights and obligations of the contract, petitioner asserts such an action was not contemplated by the parties when the contract was made and should not be subject to arbitration. We agree. Applying the reasoning of Dusold and Michaels, and upon review of the contract containing the arbitration clause and the factual allegations of the complaint in this case, we find the district court erred in concluding that petitioner's tort claim falls within the arbitration provision.
*641 The absence of any mention of the parties' rights in the event of personal injuries or death arising out of any alleged tortious conduct such as that which allegedly occurred in this case creates ambiguity and uncertainty as to the intent of the parties. Under a well-established rule of construction, we are constrained to construe the provisions of the U.S. Home contract against its drafter, U.S. Home. The contract between the Seiferts and U.S. Home explicitly refers only to the sale and purchase of a house. It appears to be a standard commercial contract containing provisions relating solely to the duties and obligations of the parties in regard to the construction and sale of the house. The two-paged sales agreement written by U.S. Home includes such matters as the purchase price and payment schedule, deposits, the time and location of closing, closing costs, title, substitutions, site specifications, insulation requirements, damage to the property before closing, promotional displays, the parties' rights in the event of a default, and the homeowner's warranty. There is nothing within these provisions to indicate that either party intended to include tort claims for personal injuries arising under the common law within the scope of either the contract in general or the arbitration provision in particular. In fact, the only reference to casualties relates solely to damages to the property itself and not to personal injuries suffered by either party as a consequence of the tortious conduct of the other.
Indeed, the language of the arbitration provision itself supports such a conclusion. Its terms provide: "If not resolved by mediation, the claim will be settled in accordance with the Commercial or Construction Industry Arbitration Rules, as appropriate, of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction of the matter, provided, however, that if Seller's warranty plan establishes an alternative dispute resolution procedure, a claim covered by Seller's warranty will be determined in accordance with that alternative procedure prior to submission to binding arbitration, if necessary." This language essentially suggests that, as in Michaels, the parties anticipated potential disputes arising out of the interpretation, performance, or breach of the contract and accordingly provided that disputes as to those matters be arbitrated. Indeed, any arbitration was to be in accord with the "Commercial or Construction Industry Arbitration Rules" or as provided by the "Seller's Warranty Plan." None of this language suggests that tort claims for wrongful death or personal injury arising out of noncontractual common law obligations were contemplated.
Importantly, too, the factual allegations in the complaint do not rely on the contract between the Seiferts and U.S. Home. The negligence claim for wrongful death is based on U.S. Home's breach of its duty to exercise reasonable care in designing, manufacturing, and assembling new homes in a manner that would prevent the air conditioning unit from pulling in carbon monoxide from the garage and distributing it throughout the home. The complaint also asserts a breach of duty to warn of a known dangerous condition and of defects that U.S. Home knew or should have known would render the home unreasonably dangerous to use by anyone, not just the Seiferts. These allegations rely on obligations that would extend to anyone, third parties as well as the Seiferts, who might be injured by U.S. Home's tortious conduct. Indeed, it appears to be entirely fortuitous that it was Mr. Seifert, and not a guest or someone else in the house, who was injured as a result of the alleged neglect by U.S. Home. Obviously, such a guest or other person would not be subject to the arbitration provisions of the contract between U.S. Home and the Seiferts.[5]
*642 While it is certainly true that this dispute would not have arisen but for the sales agreement between U.S. Home and the Seiferts, we conclude that the mere existence of such contract is not sufficient to compel that this dispute be arbitrated. See Armada; Hersman. None of the allegations assert that U.S. Home's duties or obligations arose from or were governed by the contract. See Necchi, 348 F.2d at 696. Even under a broad approach, the dispute does not create a "significant relationship" to the contract because none of the allegations in the complaint refer to or mention the sales agreement between the Seiferts and U.S. Home. Accordingly, we are unable to conclude that the tort action dispute in this case bears a significant relationship to the contract or that the parties in contracting necessarily contemplated the existence and arbitration of future tort claims for personal injuries based on a party's common law negligence.[6]

Right to Trial by Jury
Moreover, public policy also supports the result we reach in this case. As noted by the trial court, to require petitioner to submit her tort claim to binding arbitration would deprive her of her rights to a trial by jury, due process and access to the courts. See generally Jean R. Sternlight, Rethinking the Constitutionality of the Supreme Court's Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns, 72 Tul. L.Rev. 1, 48 (1997). As Sternlight notes:
In particular, lower courts have failed to consider the visibility and clarity of the purported agreement, the relative strength and knowledge of the parties, the voluntariness of the agreement, and the substantive fairness of the agreement. Rather than ignoring these factual variations, courts should use them to craft a balancing test to determine whether parties waived their constitutional rights by agreeing to arbitration. It is wrong to stretch contractual interpretations to uphold a purported arbitration agreement where such an agreement would waive constitutional rights.
Id. Neither the statutes validating arbitration clauses nor the policy favoring such provisions should be used as a shield to block a party's access to a judicial forum in every case. Further, in the absence of express language in the parties' contract mandating arbitration of such disputes, we conclude that such a result is not required here. To deprive petitioner of these certain rights simply because she and her husband signed a contract which contained an arbitration provision, the language of which provides no indication that tort claims arising under the common law were contemplated or included, would clearly be unjust. We do not think that the legislature in enacting section 682.02, Florida Statutes (1999), nor the courts in adopting any general policy favoring arbitration, intended such a result.

CONCLUSION
The agreement in this case related to a commercial transaction between a home builder and a purchaser. The tort claim filed in this case neither relies on the agreement nor refers to any provision within the agreement. Rather, the petitioner's tort claim relates to duties wholly independent from the agreement. Further, nothing within the agreement indicates the parties contemplated that death or injuries to persons might occur and that, in the event such injuries did occur, any resulting tort claims would be subject to arbitration. In sum, there is no reference in the agreement signed by the parties to tort claims under the common law for future injuries to persons. Accordingly, we hold that the tort claim in this case does not have a sufficient relationship to *643 the agreement as to require submission of the cause to arbitration. Based on this holding, we quash the decision below and approve the decision in Michaels. The case is remanded with directions that the trial court's denial of arbitration be affirmed.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and PARIENTE, JJ., concur.
OVERTON, Senior Justice, concurs with an opinion.
OVERTON, Senior Justice, concurring.
There is no question that appellate tribunals are in dispute in their respective construction of contract arbitration provisions that mandate arbitration of disputes between parties of "[a]ny controversy or claim arising under or related to this Agreement." The real question is whether the parties had the intent for this type of provision to apply to any dispute that would not have arisen but for the contract, including (1) all tort claims, and (2) a waiver of a jury trial for those tort claims as well as contract claims. I find the intent of the parties is not clear from the use of this language, and consequently agree with the majority.
The authors of these arbitration provisions need to go back to the drafting board. If the intent is to provide for arbitration broadly for all claims, contract and tort, such a provision should make that intent clear. I would suggest that such a provision should reflect (1) that the arbitration provision applies to all disputes, contract or tort, that would not have arisen but for the contract and resulting relationship between the parties; and (2) that the parties by this provision waive their rights to a jury trial on all such contract or tort disputes.
I favor the broad application of arbitration provisions, but the intent of the parties must be made clear by the terms of those provisions.
NOTES
[1] After briefing and oral argument in this case, the parties settled their claims and filed a stipulation for dismissal of this review proceeding. Because this issue is likely to recur, especially if the matter is left unresolved, we exercise our discretion to retain jurisdiction in this case. See Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984).
[2] We recognize that the issue could be framed in terms of whether a valid written agreement to arbitrate exists, or alternatively, whether the arbitration provision in question covers the tort action filed here. Fortunately, we believe, the analysis to resolve either question is essentially the same. It is something of a chicken and egg situation as to which comes first.
[3] The Seventh and Eleventh Circuits, on the other hand, draw little or no distinction between the two types of clauses and instead elect to follow a strong policy favoring arbitration even where the arbitration clause refers only to those claims or controversies "arising under" the contract. See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir.1993) ("We find, however, that `arising out of reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se."); Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 385 (11th Cir.1996) (rejecting Kinoshita "as not being in accord with present day notions of arbitration as a viable alternative dispute resolution procedure").
[4] In American Recovery Corp., the American Recovery Corporation (ARC) sued Computerized Thermal Imaging, Inc. (CTI), inter alia, for tortious interference with a contract and for breach of fiduciary duty. CTI moved to arbitrate the claims based on the terms of an arbitration clause in the contractual agreement between ARC and CTI. The District Court for the Eastern District of Virginia had held that the plaintiff's tortious interference and breach of fiduciary claims were not subject to arbitration because the claims sounded in tort rather than contract and because the resolution of the claims did not turn on the interpretation of the terms of the agreement, relying on Mediterranean. The Fourth Circuit, in reviewing the district court's conclusions de novo, held that the district court erred in relying on Mediterranean. Id. at 92. The court reasoned that Mediterranean involved a narrow arbitration provision, "the scope of which was limited to disputes relating to the interpretation and performance of the contract containing the arbitration clause itself." Id. at 93. In the case sub judice, however, the arbitration provision had a much more expansive reach because it included any dispute that "`ar[ose] out of or related to' the consulting agreement." Id. Relying on its earlier holding in J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir.1988), the Fourth Circuit distinguished narrow arbitration clauses such as the one in Mediterranean, which mandated only the arbitration of claims "arising under" the contract, from broader provisions which "`d[id] not limit arbitration to the literal interpretation or performance of the contract [, but] embrace[d] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" American Recovery Corp., 96 F.3d at 93 (quoting J.J. Ryan & Sons, 863 F.2d at 321).
[5] No issue has been raised here as to whether the estate of the deceased, Mr. Seifert, is bound by the terms of the contract between the Seiferts and U.S. Home.
[6] Obviously, a U.S. Home employee injured on the work site by the tortious conduct of the Seiferts would not be obligated to arbitrate the tort claim. Similarly, one might question why the Seiferts should be bound to arbitrate a tort claim based upon the common law neglect of a U.S. Home employee.