894 So.2d 296 (2005)
CITIGROUP, INC.; Citicorp Investment Services, Inc.; Citigroup Global Markets, Inc., Appellants,
v.
Anthony AMODIO, Appellee.
No. 4D04-2450.
District Court of Appeal of Florida, Fourth District.
February 23, 2005.
*297 Mark F. Bideau, Joseph C. Coates, III, Lorie M. Gleim of Greenberg, Traurig, P.A., West Palm Beach, for appellant.
Rebecca Mercier-Vargas and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Theodore Babbitt of Babbitt, Johnson, Osborne & LeClainche, P.A., West Palm Beach, for appellee.
FARMER, C.J.
A retired former employee of WorldCom decided to place his WorldCom stock shares in what he says was a "retirement" account with Citicorp Investment Services. He had acquired the shares during his years of employment with WorldCom (or its predecessor). He signed an account agreement which included an agreement to arbitrate "all controversies which may arise concerning any order or transaction, or the construction, performance or breach of this Agreement." None of his WorldCom stock was thereafter bought or sold through this account. The account agreement did not give Citicorp Investment any discretion to manage the WorldCom shares; the retiree was responsible for *298 making any decisions to trade these shares.
Some time later, he sought advice from representatives of CitiGroup as to the wisdom of having nearly his entire holdings in WorldCom stock alone, fearing that if something happened his retirement savings would be gone. He was referred to Salomon Smith Barney (SSB), a subsidiary of CitiGroup and one of its analysts. The SSB analyst assured him that he had analyzed WorldCom and recommended holding onto it because "it would break triple digits by the end of the year." Needless to say, something bad happened to WorldCom. The retiree lost all value from his WorldCom portfolio.
The retired employee sued CitiGroup, Citicorp Investment Services, and the CitiGroup subsidiary that is the successor to SSB, for fraud and negligent misrepresentation, Florida Blue Sky law violations, breach of an oral contract and emotional distress. Defendants all moved to compel arbitration on the basis of the foregoing arbitration provision.[1] In denying the motion, the trial judge found that none of plaintiff's claims involved an "order or transaction" and that none of the claims involved "construction, performance or breach" of the Citicorp Investment account agreement. All defendants join in appealing that order.
This is not a case in which the federal policy favoring arbitration agreements drives our decision. Federal law favors arbitration only as to issues the parties have actually agreed to arbitrate. Volt Info. Scis. Inc. v. Stanford Univ., 489 U.S. 468, 478-79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (federal arbitration statute meant to overrule old refusal to enforce arbitration agreements and place them on same footing as other contracts but does not confer right to compel arbitration of any dispute at any time; Act confers only right to order arbitration provided in agreement). Also under federal law, it is the language of the agreement that defines the scope of an arbitration agreement. EEOC v. Waffle House Inc., 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration."). In making its initial construction of an agreement to arbitrate for ambiguity, the court must apply general state contract law. First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate. . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (arbitration agreements are construed under state law "concerning the validity, revocability, and enforceability of contracts generally."). Hence, the agreement to arbitrate here is governed by Florida's general contract law principles.
Under Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999), "the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily `rests on the intent of the parties.'" Florida's general contract law requires that the court discern the intent of the parties from the language used in their agreement. Gendzier v. Bielecki, *299 97 So.2d 604, 608 (Fla.1957) ("The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document."); Lyng v. Bugbee Distrib. Co., 133 Fla. 419, 182 So. 801, 802 (1938) ("The intention of the parties to a contract is to be deduced from the language employed by them. The [unambiguous] terms of the contract . . . are conclusive, . . . the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used."); Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, 410 (1930) (same); Cont'l Cas. Co. v. Bows, 72 Fla. 17, 72 So. 278 (1916) (same); Atlanta & St. A.B. Ry. Co. v. Thomas, 60 Fla. 412, 53 So. 510 (1910) (same).
In this instance, the words chosen by the parties reflect an obvious intent to narrow the class of arbitrable claims to only those that "concern [ ] any order or transaction, or the construction, performance or breach of this Agreement." That is to say, the words used show that they did not intend that any issue arising between them be arbitrated. The language they chose demonstrates instead a clear intent to narrow arbitration to only those contract disputes involving an "order or transaction" or which arise from their agreement in some direct way. In short a dispute between them must be arbitrated only if it is connected to the construction, performance or breach of their account agreement.
As the Seifert court explained general contract law principles:
"Disputes arise in many and varied contexts and the mere coincidence that the parties in dispute have a contractual relationship will ordinarily not be enough to mandate arbitration of the dispute. In other words, the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one `arising out of or relating to' the agreement."
750 So.2d at 638. The court pointedly added:
"for a tort claim to be considered `arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself."
Id. The court emphasized that a required relationship between a dispute and the contract is not satisfied simply because the dispute would not have arisen in the absence of the contract between the parties. The court explained the legal test as follows:
"If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Therefore, a contractually-imposed arbitration requirement would not apply to such a claim."
Id. at 640; see also Terminix Int'l Co. v. Michaels, 668 So.2d 1013 (Fla. 4th DCA 1996) (same); Dusold v. Porta-John Corp., 167 Ariz. 358, 807 P.2d 526 (Ct.App.1990) (same).
*300 All of plaintiff's claims in this case allege breaches of law imposed generally to enforce public policy creating duties owed to the public at large. This is unreservedly true of the claims for Blue Sky law violations and negligent misrepresentation; the other claims less emphatically so. We therefore agree with the trial judge that the claims in suit do not fall within the narrow arbitration intent expressed by the parties in their agreement.
Apart from the foregoing, it is also apparent that plaintiff had no prior agreement whatever with CitiGroup. His written agreement was with only Citicorp Investment and the predecessor to CitiGroup Global Markets. Accordingly there is no arguable basis to require arbitration between plaintiff and CitiGroup. See Steve Owren Inc. v. Connolly, 877 So.2d 918 (Fla. 4th DCA 2004) (no party may be forced to submit dispute to arbitration that party did not intend and agree to arbitrate).
Affirmed.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] Although only Citicorp Investment was a signatory to the agreement, the other two defendants claimed it benefited them as well. Their theories of benefit under the arbitration provision are not relevant to our disposition because we have decided this appeal on other grounds.