# Third District Court of Appeal

## State of Florida

Opinion filed November 1, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-725
Lower Tribunal No. 15-14380
_____


**Lucky Star Horses, Inc., et al.,**
Appellants,

vs.

**Diamond State Insurance Company,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Lopez & Best, and Virginia M. Best, for appellants.

Cole Scott & Kissane, and Scott A. Cole and Lissette Gonzalez, for appellee.


Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

SALTER, J.

This is an appeal from a non-final order granting the appellee/insurer's motion to stay a circuit court case and to compel arbitration. The two appellants/insureds, Lucky Star Horses, Inc. ("Lucky Star"), and Marlen Fundora,[1] claimed coverage and insurance benefits under an "Equine Mortality Policy" following the death of a Paso Fino horse owned by Ms. Fundora. Although the appellants have identified a succession of pleadings filed in the case before the insurer, Diamond State Insurance Company ("Diamond State"), invoked the limited right to arbitration in the insurance policy, the trial court found the appellants' claim of waiver unpersuasive and granted Diamond State's motion to stay the lawsuit pending arbitration. On the unusual facts presented by the record in this case, we affirm.

Facts and Procedural History

In April 2014, Ms. Fundora bought the four year-old, registered, Paso Fino stallion, "Secreto del Rosario," for $180,000.00, payable $40,000.00 at the time of the sale and delivery and in monthly instalments payable thereafter for a period of 19 months. The Equine Mortality Policy at issue here insured the life of the stallion for a policy period April 28, 2014, to April 28, 2015. No formal documentation is in the record transferring ownership of the horse to Lucky Star,

---

[1] The notice of appeal only designated one of the two plaintiffs (Lucky Star) as appellant, but the initial brief filed contemporaneously with the notice included the second plaintiff, Ms. Fundora, as an appellant as well. The non-final order under review also reflects that it applies to both appellants.

2

but both Lucky Star and Ms. Fundora are identified in the policy as the "named insured" at the same address in Hialeah, Florida. Lucky Star is a Florida corporation wholly owned and controlled by Ms. Fundora. Ms. Fundora testified that she intended to convey the stallion to Lucky Star when the horse was older and would become a breeder.

Before any such transfer of ownership, however, the horse died—on January 17, 2015—while in a stall awaiting a competitive Paso Fino show at Tropical Park. Ms. Fundora promptly notified the insurer by telephone, and worked with the insurer to arrange a necropsy. In compliance with the policy, Ms. Fundora submitted a single, sworn proof of loss on behalf of both Lucky Star and herself, and Diamond State investigated (including an examination under oath of Ms. Fundora). In June 2015, having received no payment for her claim of loss under the policy, Ms. Fundora retained counsel and filed a circuit court lawsuit with Lucky Star as the sole plaintiff and Diamond State as the defendant.

Diamond State filed an answer and numerous affirmative defenses, and the parties exchanged pretrial discovery requests. To that point, Diamond State did not move to compel arbitration or assert that right as an affirmative defense. Diamond State did, however, contend that Ms. Fundora was the only owner of the horse, such that Lucky Star had no standing to make a claim for benefits under the policy. In November 2016, Diamond State moved for final summary judgment on

this issue, contending that there was no genuine issue of material fact that Lucky Star had no ownership interest in the insured stallion.

Two weeks later, Lucky Star (then the only plaintiff) moved to amend the complaint to add Ms. Fundora as an individual plaintiff and claimant under the policy, attaching a proposed amended complaint. Diamond State opposed the motion, but the motion to amend was granted and the amended complaint was deemed filed in December 2016.

In January 2017, and before filing any other pleading or paper in response to the amended complaint, Diamond State filed its motion to compel arbitration and stay the circuit court proceedings. Diamond State invoked the limited arbitration provision in Part V. of the Equine Mortality Policy:

> Should there arise a difference of opinion solely concerning the value of a deceased horse which cannot be amicably settled between the Company [Diamond State] and the Insured, it is understood and agreed that such difference of opinion shall, by agreement of the Company and the Insured, be submitted for arbitration to three (3) disinterested parties, one to be selected by the Company, one to be selected by the Insured, and one to be selected by the two so selected. A decision of the majority of the three shall be final in each case. Each party shall pay for the expense of its own arbitrator and a pro rata portion of the expenses of the third arbitrator.

Diamond State conceded in its motion to compel arbitration that it "is no longer contesting liability in any way relative to this matter due to Plaintiffs' recent pleading amendment, and the dispute solely concerns the value of a deceased horse, which falls well within the province of the Arbitration Clause." Lucky Star

and Ms. Fundora opposed the motion to compel arbitration, asserting waiver.[2] Diamond State asserted that its initial defense had been directed against Lucky Star only (on the basis that Lucky Star had no ownership interest in the horse), involving no issue as to the horse's value. Diamond State contended that once Ms. Fundora was added as a plaintiff in the amended complaint, it dropped any defense relating to standing, liability, or coverage, and immediately invoked its right to arbitration. The value of the deceased horse, Diamond State argued, was never an issue until that point in the proceedings.

The trial court agreed and granted the motion. This appeal followed.

Analysis

In the absence of any argument that the law of any state other than Florida applies to the subject policy, we are guided by the seminal case of Seifert v. United States Home Corp., 750 So. 2d 633 (Fla. 1999). The trial court correctly analyzed the three required elements of a motion to compel arbitration under Seifert. First, in this case the parties do not deny that the policy contains an arbitration provision. Second, the trial court correctly determined that value is an arbitrable issue. The applicable policy provision provides that Diamond State is to "indemnify the Insured for the actual cash value of such horse at the time of the accident."[3] The

---

[2] Lucky Star and Ms. Fundora also argued that the arbitration provision is ambiguous, amounting to an "agreement to agree" and requiring consent by the parties. The trial court rejected this argument, and we do so as well without further discussion.

5

actual cash value of the stallion at the time of its death is a matter that became a disputed issue once Ms. Fundora, the owner of the horse, joined the lawsuit as a party plaintiff. And as a result of the concessions by Diamond State, that value is the only issue in contention.

The third element of <u>Seifert</u> requires a determination of whether the party invoking arbitration has waived that right by virtue of its pleadings and conduct in the lawsuit. The unique feature of the present case is that the case proceeded for over a year, and numerous pleadings were filed (and depositions were taken), before the motion to compel arbitration was filed. The distinguishing feature of the present case is that all of those actions occurred in a case in which the only plaintiff at the time had no right to compensation under the policy because it did not own the deceased horse. It was not until this defect was cured, through the filing of the amended complaint adding Ms. Fundora as plaintiff, that liability was appropriately conceded by Diamond State, and the limited arbitration clause—confined to the issue of actual cash value—became pertinent.

"Waiver," for purposes of rights to arbitration and other important rights, means "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right."

---

[3] The provision limits the benefit payable to an amount "specified in the Schedule applicable to such horse, less any Deductible." The subject policy had a zero deductible amount, and the Schedule J limit of liability was shown to be $180,000.00.

6

<u>Raymond James Fin. Servs., Inc. v. Saldukas</u>, 896 So. 2d 707, 711 (Fla. 2005). The record in this case discloses that the "known right" to be considered is Diamond State's right to invoke arbitration to determine actual cash value if disputed by the insured owner of the horse at the time of its death, i.e., Ms. Fundora. Diamond State could not, and did not, waive its right to arbitrate value in defending the initial phase of the case against Lucky Star.

Finally, "All questions about waivers of arbitration should be construed in favor of arbitration rather than against it." <u>Doctors Assocs., Inc. v. Thomas</u>, 898 So. 2d 159, 162 (Fla. 4th DCA 2005).

For all these reasons, we affirm the non-final order staying the circuit court lawsuit[4] and directing the parties to submit to arbitration in accordance with the terms of the policy.

---

[4] In the order under review, the trial court also directed that a status report be filed in six months. This salutary ruling recognizes that the arbitration is quite limited—"actual cash value" of the insured horse at death—and allows the circuit court to monitor and prod, as necessary, to assure progress in the case.