# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

VENN THERAPEUTICS, LLC;
SAM SHRIVASTAVA; and SANDIP PATEL,

Appellants,

v.

CAC PHARMA INVESTMENTS, LLC, and C&J
HEALTHCARE INVESTMENTS, LLC,

Appellees.

Nos. 2D23-819, 2D23-821
CONSOLIDATED

_____

March 6, 2024

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Hillsborough County; Rex Martin Barbas, Judge.

Steven L. Brannock and Sarah B. Roberge of Brannock Berman & Seider,
Tampa, for Appellants.

Lindsay Patrick Lopez, Adam B. Brouillet, and Brigid A. Merenda of
Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for
Appellees.


CASANUEVA, Judge.

The Appellants seek review of an order denying their motions to
compel arbitration or dismiss the Appellees' complaint. They argue that

the arbitration provision contained in the parties' agreements require that this dispute be resolved in arbitration. The trial court found that although the arbitration clause in the parties' contracts is broad, the Appellees' claims are not subject to arbitration because the claims do not arise from the contract. We conclude that a significant nexus exists between the allegations in the complaint and the parties' agreements, and we reverse.

I. THE ARBITRATION PROVISION

CAC Pharma Investments and C&J Healthcare Investments both invested in Venn Therapeutics; CAC and Venn entered into a Subscription Agreement, and C&J and Venn entered into a Private Placement Agreement. Both of the Appellees' agreements contain the same arbitration clause, and the discrete focus of the issue before this court is the language of that arbitration clause.

The arbitration provision in the parties' agreements provides as follows:

**13. <u>Arbitration</u>**

13.1. The parties agree to submit all controversies to arbitration in accordance with the provisions set forth below and understand that:

 a. Arbitration shall be final and binding on the parties.
 b. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
 c. Pre-arbitration discovery is generally more limited and different from court proceedings.
 d. The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by arbitrators is strictly limited.
 e. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

2

f.     All controversies which may arise between the parties concerning this Agreement shall be determined by arbitration pursuant to the rules then pertaining to the Financial Industry Regulatory Authority ("FINRA"). Judgment on any award of any such arbitration may be entered in the courts of the State of Ohio sitting in Warren County and the United States District Court for the Southern District of Ohio sitting in Cincinnati, and any state or appellate court therefrom, or in any other court having jurisdiction of the person or persons against whom such award is rendered.  Any notice of such arbitration or for the confirmation of any award in any arbitration shall be sufficient if given in accordance with the provisions of this Agreement.  The parties agree that the determination of the arbitrators shall be binding and conclusive upon them.  The prevailing party, as determined by such arbitrators, in a legal proceeding shall be entitled to collect any costs, disbursements and reasonable attorney's fees from the other party.  Prior to filing an arbitration, the parties hereby agree that they will attempt to resolve their differences first by submitting the matter for resolution to a mediator, acceptable to all parties, and whose expenses will be borne equally by all parties.  The mediation will be held in the County of Warren, Ohio, on an expedited basis.  If the parties cannot successfully resolve their differences through mediation, the matter will be resolved by arbitration as provided above.  The arbitration shall take place in Cincinnati, Ohio, on an expedited basis.

In the first part of this arbitration provision, the parties agreed "to submit all controversies to arbitration in accordance with the provisions set forth below."  Importantly, subsection (f) provides additional illumination of the term "all controversies."  It states that "all controversies" subject to arbitration are those "which may arise between the parties concerning this Agreement."  Therefore, to be arbitrable the claim must concern the agreement.

## II.  DISCUSSION

3

A.  Standard of Review

The scope of an arbitration clause is a matter of contractual interpretation.  *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. 1st DCA 2018).  "Determining whether an arbitrable issue exists requires the court to examine the plain language of the parties' arbitration agreement."  *Bailey v. Women's Pelvic Health, LLC*, 309 So. 3d 698, 701 (Fla. 1st DCA 2020).  The standard of review we use when examining a trial court's construction of an arbitration agreement as well as its application of the law to the facts is de novo.  *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022) (quoting *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. 2d DCA 2008)).

B.  Governing Arbitration Law

The parties' contracts provide that they are to be "governed by the laws of the State of Ohio and the federal laws applicable therein."  The parties have stipulated that in this instance the laws of the State of Ohio and the State of Florida are the same.  Accordingly, we will examine both the law in Ohio and Florida as it relates to the interpretation of the arbitration provision.

1.  *Ohio Arbitration Law*

We begin our examination with two opinions from Ohio courts, *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 842 N.E.2d 488 (Ohio 2006), an opinion of the Supreme Court of Ohio, and *Arnold v. Burger King*, 48 N.E.3d 69 (Ohio App. 8th Dist. 2015), a decision of the Eighth District Court of Appeals.

The issue before the Ohio Supreme Court in *Academy of Medicine of Cincinnati*, 842 N.E.2d at 491, was "whether the parties agreed to submit the dispute at issue to arbitration."  To resolve this issue, the

4

court indicated that the first step is to determine "whether the arbitration clause itself . . . contains limitations as to arbitrability."  842 N.E.2d at 492.[1]  The next step requires a court to determine "whether the arbitration clause limits itself only to certain aspects of the underlying contract."  *Id.*  In making this determination, it is necessary to classify the clause as either narrow or broad.  *Id.*  The court held that when the clause "contains the phrase 'any claim or controversy arising out of or relating to the agreement,' " it is considered to be a broad arbitration clause.  *Id.* at 492-93 (first quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); and then quoting *ADR/JB, Corp. v. MCY III, Inc.*, 299 F. Supp. 2d 110, 114 (E.D.N.Y. 2004)).  The court noted that "[a]rbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision."  *Id.* at 493.

In *Arnold,* the court recognized that *Academy of Medicine* remained a touchstone for arbitration clause analysis.  Further, the court recognized that any ambiguity in the language of the contract clause "should be resolved in favor of arbitration."  *Arnold,* 48 N.E.3d at 76 (quoting *Taylor v. Ernst & Young, L.L.P.,* 958 N.E.2d 1203, 1210 (Ohio 2011)).

Additionally, relying on the federal standard set forth in *Fazio v. Lehman Bros.,* 340 F.3d 386 (6th Cir. 2003), the *Arnold* court indicated that the proper manner of analysis was "to ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  48 N.E.3d at 76 (quoting *Acad. of Med. of Cincinnati,* 842 N.E.2d at 491).

---

[1] In the present case, the arbitration clause does not contain any limitation as to the scope of the arbitration agreement.

5

This doctrine operates to allow "courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented." *Id.* at 77 (quoting *Acad. of Med. of Cincinnati*, 842 N.E.2d at 494).

### 2. *Florida Arbitration Law*

The seminal arbitration opinion in Florida is *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). There, our supreme court identified the proper rules of construction our courts are to follow. When reviewing an arbitration clause, a court is to consider three elements: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Id.* at 636 (citing *Terminix Int'l Co., L.P. v. Ponzio*, 693 So. 2d 104, 106 (Fla. 5th DCA 1997)). While arbitration is favored in Florida, such clauses still require courts to engage in contract interpretation to identify the intent of the contracting parties. *Id.* It is the agreement that determines which issues the parties agreed to arbitrate. *See MacDougald Fam. Ltd. P'ship, LLP v. Rays Baseball Club, LLC*, 371 So. 3d 988, 991 (Fla. 2d DCA 2023) (holding that the scope of the arbitration clause is a matter of contractual interpretation requiring the examination of the plain language used by the parties in their contract (first quoting *Beck Auto Sales, Inc.*, 249 So. 3d at 768; and then quoting *Bailey*, 309 So. 3d at 701)).

In discussing the interpretation of an arbitration provision, the *Seifert* court noted that the actual terminology of the provision indicates its meaning. 750 So. 2d at 636. "For example, clauses including all claims or controversies 'arising out of' the subject contract" limit arbitration to "claims having some direct relation to the terms and provisions of the contract." *Id.* The supreme court noted that the use of "the phrase 'arising out of or relating to' the contract has been

6

interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims." *Id.* at 637. To come within the reach of a broad arbitration clause "it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* at 638.

C. The Instant Clause

*1. The trial court correctly found that the arbitration clause is broad.*

It is the text of the arbitration clause before us that governs and determines whether the parties must submit their claims to arbitration. The words determine the outcome. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012). Thus, an examination of the arbitration clause is necessary to conclude whether it is narrow or broad. The language which the parties agreed on is critical: "The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

In the present case, the contract requires the parties to submit to arbitration "[a]ll controversies which may arise between the parties concerning this Agreement." Therefore, our focus is first upon the word "concerning." The parties' contract does not define the term. When a contractual term is not defined in a contract, "[d]ictionaries aid us in establishing the publicly understood plain meaning of a word whose relevant definition is contested." *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 776 (Fla. 2023); *see also Tsuji v. Fleet*, 366 So. 3d 1020, 1028 (Fla. 2023) (holding that, absent a supplied definition, we look to dictionaries for evidence of that meaning). To that end, we first consult Black's Law Dictionary, which defines "concerning" as "[r]elating to;

7

pertaining to; affecting; involving; being substantially engaged in or taking part in."  *Concerning, Black's Law Dictionary* (6th ed. 1990). Additional illumination of the term's meaning is found in the definition of "concern."  This word is defined as "[t]o pertain, relate, or belong to; be of interest or importance to; to have connection with; to have reference to; to involve; to affect the interest of."  *Concern, Black's Law Dictionary* (6th ed. 1990).

Similar definitions are found in Webster's New World College Dictionary, which defines "concerning" as "relating to or having to do with; in regard to; about."  *Concerning, Webster's New World College Dictionary* (4th ed. 1999).  Likewise, the word 'concern' is defined to mean "to have a relation to or bearing on; deal with."  *Concern, Webster's New World College Dictionary* (4th ed. 1999).

As the term "concerning" is often defined as "relating to," we look to cases involving arbitration clauses that contain the language "relating to."  In both Ohio and Florida, courts have categorized arbitration clauses containing "relating to" as broad clauses.  *See Acad. of Med. of Cincinnati*, 842 N.E.2d at 492-93 (holding that the arbitration clause is broad when it includes the language "arising out of or relating to the agreement"); *ABC Home Care & Nursing Servs., Inc. v. Molina Healthcare of Ohio, Inc.*, 114 N.E.3d 757, 763 (Ohio 10th Dist. 2018) (noting that arbitration clause was broad where it required arbitration for "[a]ny claim or controversy arising out of or in connection with this Agreement"); *see also Seifert*, 750 So. 2d at 637 (holding that the language "arising out of or relating to" the contract is broad and "encompass[es] virtually all disputes between the contracting parties").  Therefore, similar to those cases interpretating the language "relating to" in arbitration clauses as broad, we interpret the language "concerning this Agreement" as broad.

*But see Jackson,* 108 So. 3d at 593 (reasoning that an arbitration provision that required arbitration of claims "arising out of" the contract is typically narrow in scope and that an arbitration provision that required arbitration of claims "arising out of or relating to" the contract is broad in scope because "[t]he addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract— regardless of whether the claim is founded in tort or contract law").

We find support for our conclusion in the recent opinion of this court in *MacDougald,* 371 So. 3d 988. There, this court reviewed an arbitration clause containing the word "concerning." The arbitration clause in *MacDougald* provided:

> If at any time during the existence of the Partnership, any question, disagreement, difference or controversy including, without limitation, determination of whether cause exists under Section 7.4 . . . or Section 10.3 . . . shall arise **between any of the Partners concerning the meaning or interpretation of this Agreement**, then the Managing Partner or any General Partner may direct that such question, disagreement, difference or controversy be submitted to nonbinding mediation in St. Petersburg, Florida, in accordance with the mediation rules then obtaining of the American Mediation Association (or such other rules as to which the parties may agree), and all of the Partners agree to participate in such mediation. If such mediation does not result in a resolution of the issue, then the Managing Partner . . . may direct that such question, disagreement, difference or controversy be submitted to and determined by binding arbitration . . . in accordance with the rules then obtaining of the American Arbitration Association.

*Id.* at 990.

Writing for the court, Judge Black discussed the meaning of "concerning" in the context of an arbitration provision: " 'Concerning,' in this context, has no materially different meaning than 'relating to,'

9

'about,' 'with reference to,' and 'regarding.' " *Id.* at 991 n.2 (citing *Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 948-49 (Fla. 2020)). This court held that the arbitration clause in that case was broad as it contained the term "concerning" but that the clause restricted the subject matter of arbitrable disputes to those involving the " 'meaning or interpretation' of the Partnership Agreement." *Id.* From this holding, two points are made. First, the use of "concerning" generally signifies a broad arbitration clause, unless, second, additional language in the arbitration provision restricts its scope or application. In *MacDougald*, arbitration was limited to claims "concerning the meaning or interpretation of this Agreement." *Id.* at 990. Here, in comparison, such limiting language is not found in the arbitration clause.

*2. A significant nexus exists between the allegations in the complaint and the parties' agreements.*

To determine whether a claim must be submitted to arbitration when the contract contains a broad arbitration clause, the court must examine "whether a 'significant relationship' exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute (i.e., tort or breach of contract)." *Seifert*, 750 So. 2d at 637-38 (citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93-94 (4th Cir. 1996)). A "significant relationship" exists if there is a "contractual nexus" between the contract and the claim. *Id.*

"A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract." *Jackson*, 108 So. 3d at 593. There is a nexus if the claim "emanates from an inimitable duty created by the parties' unique contractual relationship." *Id.* Here, the Appellees agree to the general

concept that fraud and securities law claims may be arbitrable, but they argue that their statutory and tort claims are not arbitrable because there is no nexus between the claims and the agreements. They argue that the Appellants breached a duty that arises from law and is generally owed to the public, not from a duty imposed by the contract.

The allegations in the present case pertain to events surrounding the contract's formation and the execution of the contract.

> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *Barmat [v. John and Jane Doe Partners A–D]*, 155 Ariz. [519, 523], 747 P.2d [1218, 1222 (1989)]. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. *Id.* Therefore, a contractually-imposed arbitration requirement . . . would not apply to such a claim.

*Seifert*, 750 So. 2d at 640 (first alteration in original) (quoting *Dusold v. Porta-John Corp.*, 807 P.2d 526, 531 (Ariz. Ct. App. 1990)); *see also Citigroup, Inc. v. Amodio*, 894 So. 2d 296, 300 (Fla. 4th DCA 2005) (holding that the claims were not dependent on the contract where the complaint alleged a breach "of law imposed generally to enforce public policy creating duties owed to the public at large").

In the present case, the Appellees' complaint alleged three counts against the Appellants for violations of Florida's Securities and Investor Protection Act, *see* § 517.211, Fla. Stat. (2019). Count I alleged that the sale of Venn's securities to Appellees was made in violation of section 517.07 because the securities were not registered pursuant to that chapter, the securities were not exempt from such registration, and prior

to each sale, the Appellees were not given a prospectus as required by the Financial Services Commission.

Count II asserted that the sale of Venn's securities to the Appellees violated section 517.12(1) because the Appellants were not registered with the Office of Financial Regulation of the Financial Services Commission as required by section 517.12. Count III claimed that the Appellants violated section 517.301(1)(a), as they misrepresented and omitted material facts and the Appellees relied on those misrepresentations and omissions in deciding to invest in Venn.

The Appellees also alleged two counts against Venn for fraudulent inducement and negligent misrepresentation. Count IV alleged that Venn, in order to induce the Appellees to invest, made fraudulent representations and omissions of material facts regarding other investments secured by Venn. Count V made similar factual claims, alleging a cause of action for negligent misrepresentation.

Finally, count VI alleged an action for recission against Venn, claiming that Venn failed to inform the Appellees of their right to void their investments pursuant to section 517.061(11)(a)5.

We conclude that the claims alleged in the complaint are inextricably intertwined with the contracts and arise from the formation of the contracts. Further, the resolution of the claims will require consideration and reference to the terms found in the parties' contracts. In *Beazer Homes Corp. v. Bailey*, 940 So. 2d 453, 456 (Fla. 5th DCA 2006), the court examined an arbitration clause stating that "[s]hould a controversy, claim or dispute arise out of this contract, Buyer(s) shall submit to binding arbitration." The court noted that when a claim is founded on the breach of a statute, instead of breach of contract, it is not exempt from arbitration and that "[c]laims brought under FDUTPA have

been held to be subject to arbitration if a contract between the parties provides for arbitration." *Id.* at 461.

> Where claims of fraud are alleged based on the FDUTPA, Florida courts have refused to enforce arbitration clauses on only a limited basis, such as where the arbitration clause is unconscionable, *Fonte v. AT & T Wireless Services, Inc.*, 903 So. 2d 1019 (Fla. 4th DCA 2005); *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726 (Fla. 4th DCA 2003); where it is against public policy, *Presidential Leasing, Inc. v. Krout*, 896 So. 2d 938 (Fla. 5th DCA 2005); or where the provision is deemed to limit access to the courts, *Value Car Sales, Inc. v. Bouton*, 608 So. 2d 860, 861 (Fla. 5th DCA 1992). Thus, arbitration under the FDUTPA rises or falls on grounds such as equity, public policy, or constitutional prohibition.

*Id.* at 462.

The court held that the relationship between the parties was created by the sales contract and that even though "there is a general common law duty not to lie or misrepresent facts in connection with" such a sale, a third person could not have sued the defendant based on the same allegations. *Id.* at 460.

Further, "duties alleged under theories such as fraud in the inducement of a contract, fraud in the performance of a contract, or negligent misrepresentation are duties dependent upon the existence of a contractual relationship between the parties." *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003); *see Qubty v. Nagda*, 817 So. 2d 952, 956 (Fla. 5th DCA 2002) ("Nor does the fact that the Nagdas are seeking rescission of the contract on the basis of fraud in the inducement preclude enforcement of the arbitration provisions contained in the contract, as long as the claims for rescission are directed at the contract as a whole, as opposed to the arbitration provision contained in the contract."); *see also Abbey v. Skokos*, 303 Fed. Appx. 911, 913 (2d Cir. 2008) (holding that where the sale or purchase of securities is at

13

issue in the action, the claims of "securities fraud in connection with that transaction 'arises' from the agreement").  Here, the allegations in the complaint involve the sale of the securities as contracted for in the parties' agreements, the resolution of the claims will require reference to the agreements, and the claims emanate from unique duties created by the parties' contractual relationship.

## III.  CONCLUSION

We conclude that after examination of the contractual text and the dispositive case law, the text of the arbitration clause in this case requires that the dispute between the parties be resolved by arbitration.

Reversed and remanded.


LUCAS and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.