BLACK, Judge.
 

 Johnson, Pope, Bokor, Ruppel & Burns, LLP (“Johnson Pope”) and Roger Larson appeal the trial court’s nonfinal order denying their motion to compel arbitration.
 
 [1]
 
 Johnson Pope argues that the trial court erroneously concluded that enforcement of the arbitration clause, which was part of the legal services contract and required arbitration of malpractice claims, violates public policy. Because there is no authority in Florida stating that it is against public policy for legal services contracts to contain clauses requiring arbitration of legal malpractice claims, we reverse.
 

 I.
 
 Background Facts
 

 This case arose out of a real estate closing that took place for the sale of Paradise Lakes. The seller of Paradise Lakes was a long-time client of Johnson Pope. At some point in the late spring of 2007, the seller approached Roger Larson, an attorney with Johnson Pope, and asked Mr. Larson to represent him in the real estate transaction. The seller wanted to close in June 2007, but Mr. Larson told him there were multiple parcels of land and liquor licenses involved in the sale, and it would take him four months and at least two lawyers to complete the work. Because the seller needed to close quickly, he asked Mr. Larson to prepare a form so that he and the buyer, John Forier, could negotiate the deal themselves.
 

 During the negotiations, the seller contacted Mr. Larson and requested that he create legal entities for Mr. Forier because Mr. Forier wanted to transfer the property to the entities at the closing. Mr. Larson agreed to do so. There is some discrepancy in the record as to the extent of Mr. Larson’s representation from this point forward; however, the record does indicate that on the closing date, the seller and Mr. Forier were pressuring Mr. Larson to represent Mr. Forier. The seller
 
 *317
 
 agreed to voluntarily waive the conflict of interest, and he encouraged Mr. Larson to represent Mr. Forier so that the parties could close the deal. Thereafter, Mr. Larson quickly created a representation letter that included the following arbitration clause:
 

 You agree that any controversy, dispute, or claim between us, whether based on this agreement, on the timely payment of fees, on a claim of inadequate representation, or on any other grounds, shall be resolved exclusively through binding arbitration before a board of arbiters consisting of three attorneys, all of whom shall be members of the Clearwater Bar Association or Hillsborough Bar Association. One of the three attorneys shall be appointed by our firm, another attorney shall be appointed by you, and the two appointed attorneys shall appoint a third attorney. The arbitration shall be governed by Florida law as provided in Chapter 682 of the Florida Statutes.
 

 Mr. Forier signed the agreement, but pri- or to signing, he insisted that Mr. Larson type up an addendum that stated he had paid Mr. Larson in full for the documentation that was created for the entities. Mr. Larson signed the addendum, acknowledging payment, and the parties proceeded with the closing.
 

 II.
 
 Procedural History
 

 Following the closing, Mr. Forier filed a malpractice complaint alleging, among other grounds, that Johnson Pope failed to include all of the parcels of land in the closing documents. Johnson Pope then filed the motion to compel arbitration. After a nonevidentiary hearing on the motion, the trial court issued an order denying Johnson Pope’s motion to compel arbitration and directing the law firm to respond to Mr. Forier’s complaint. The trial court reasoned that there were factual disputes concerning the signing of the arbitration clause, and the court’s order stated it was “not prepared to grant [the motion] right now under the circumstances with the factual disputes.” On October 28, 2009, this court issued a per curiam opinion reversing the trial court’s order denying Johnson Pope’s motion to compel arbitration.
 
 See Johnson, Pope, Bokor, Ruppel & Burns, LLP v. Forier,
 
 19 So.3d 452 (Fla. 2d DCA 2009). The
 
 Forier
 
 court held: “The circuit court’s order denying the motion to compel arbitration expressly acknowledged the existence of disputed issues of fact concerning the making of the agreement to arbitrate. Accordingly, the circuit court was required to conduct an expedited hearing in order to resolve the matter.”
 
 Id.
 
 at 452 (citing
 
 Tandem Health Care of St. Petersburg, Inc. v. Whitney,
 
 897 So.2d 531, 532-33 (Fla. 2d DCA 2005)).
 

 On remand, the trial court conducted an evidentiary hearing. Following the hearing, the court made several findings of fact. The court found that Mr. Forier was not unsophisticated in any manner; that he probably read the representation agreement because it was presented to him separate from the other documents; and that the representation agreement was not procedurally or substantively unconscionable, based on Mr. Forier’s business sophistication and insistence that Mr. Larson represent him. The court also found that considering all the circumstances, even given Mr. Larson’s limited scope of representation, Mr. Larson should have pointed out the arbitration clause to Mr. Forier. The court then made two conclusions of law: (1) the arbitration clause is neither substantively nor procedurally unconscionable and (2) enforcement of the arbitration clause on the facts of this case violates
 
 *318
 
 public policy of the State of Florida.
 
 [2]
 

 III.
 
 Analysis
 

 The issue presented in this case is whether an arbitration clause that is part of a legal services contract between an attorney and a client and which requires arbitration of legal malpractice claims violates Florida’s public policy. An order denying a motion to compel arbitration is reviewed de novo.
 
 Stacy David, Inc. v. Consuegra,
 
 845 So.2d 303, 306 (Fla.2003). “In determining whether a dispute is subject to arbitration, courts consider at least three issues: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”
 
 Id.
 

 Johnson Pope argues, and we agree, that there is no dispute that an arbitrable issue exists and that Johnson Pope did not waive its right to arbitration. Instead, Johnson Pope asserts that the only issue is whether there is a valid arbitration agreement. The trial court did not cite to any authority for its ruling that the arbitration clause violated public policy, and we are aware of no authority supporting this position.
 

 When determining whether a contract violates public policy, it is necessary to carefully balance the public interest with the right to freely contract.
 
 Bituminous Cas. Corp. v. Williams,
 
 154 Fla. 191, 17 So.2d 98, 101-02 (1944). When a contract “is not prohibited under [a] constitutional or statutory provision, or prior judicial decision, it should not be struck down on the ground that it is contrary to public policy, except it be clearly injurious to the public good or contravene some established interest of society.”
 
 Id.
 
 at 101 (citing
 
 Atl. Coast Line R. Co. v. Beazley,
 
 54 Fla. 311, 45 So. 761, 786 (1907)). Therefore, courts
 

 should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract....
 

 Id.
 
 at 101-02. In Florida, courts have long held that one is bound by a contract, “[u]n-less one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract.”
 
 Kinko’s, Inc. v. Payne,
 
 901 So.2d 354, 356 (Fla. 2d DCA 2005) (quoting
 
 Estate of Etting v. Regents Park at Aventura, Inc.,
 
 891 So.2d 558, 558 (Fla. 3d DCA 2004)). It is also well-established that arbitration clauses are generally favored in the State of Florida.
 
 See Raymond James Fin. Serv., Inc. v. Saldukas,
 
 896 So.2d 707, 711 (Fla.2005)
 
 (citing Seifert v. U.S. Home Corp.,
 
 750 So.2d 633, 636 (Fla.1999)). “Arbitration is a valuable right that is inserted into contracts for the purpose of enhancing the effective and efficient resolution of disputes.”
 
 Saldukas,
 
 896 So.2d at 711.
 

 We are not aware of any Florida cases holding that it is against public policy for an attorney to include a clause in a legal services contract requiring arbitra
 
 *319
 
 tion of legal malpractice disputes. We are also not aware of any constitutional or statutory provisions prohibiting these agreements on public policy grounds. Although Mr. Forier argues that we should affirm the trial court’s decision because Mr. Larson breached his ethical duties to provide full disclosure, give candid advice, and avoid conflict when he submitted the arbitration clause to Mr. Forier without first explaining the waiver of rights or recommending review by independent counsel, we do not agree. While there are arguably ethical issues that arise in this type of contract, there is currently no Florida Bar Rule which prohibits this sort of agreement.
 
 See generally
 
 Brian Spector,
 
 Predispute Agreements to Arbitrate Legal Malpractice Claims: Skating on Thin Ice in Florida’s Ethical Twilight Zone?,
 
 82 Fla. B.J. 50, 50 (2008) (examining the ethical issues in agreements to arbitrate legal malpractice claims).
 

 Here, the trial court found that the representation agreement and the arbitration clause were neither substantively nor procedurally unconscionable. The court also found that Mr. Forier was a sophisticated businessman who read the agreement and that Mr. Forier’s signature was at the bottom of the agreement. The court’s sole reason for invalidating the arbitration agreement on public policy grounds was Mr. Larson’s failure to point out the arbitration clause to Mr. Forier; however, we find no legal support for this position.
 

 Reversed and remanded for further proceedings consistent with this opinion.
 

 WHATLEY and WALLACE, JJ., Concur.
 

 [1]
 

 . We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv).
 

 [2]
 

 . Because the parties do not raise an issue regarding the trial court's authority to make the public policy determination, we consider this argument waived.
 
 See Cuevas v. Kelly,
 
 873 So.2d 367, 373 (Fla. 2d DCA 2004) (stating that failure to raise an issue before the trial court constitutes waiver and precludes the party from raising the issue for the first time on appeal (citing
 
 Keech v. Yousef,
 
 815 So.2d 718, 719 (Fla. 5th DCA 2002))).