ON MOTION FOR CLARIFICATION

WARNER, J.
We grant the motion for clarification to correct a name, withdraw the previous opinion, and substitute the following in its place.
Chrysler appeals a final summary judgment entered after a trial court determined that Chrysler’s right of first refusal and option to purchase, contained within a sublease of property, were no longer valid due to the termination of the prime lease. Because the prime landlord executed a non-disturbance agreement to protect all of Chrysler’s rights in the sublease even upon termination of the prime lease, we conclude that the court erred in entering summary judgment as to the right of first refusal. However, we conclude that the non-disturbance agreement bound only owners of the premises, and therefore the option to purchase that part of the prime lease property other than the premises was terminated. We therefore affirm in part and reverse in part.
The facts are somewhat lengthy and complicated, but not in dispute. In the late 1970’s or early 1980’s, Michael K. Davis (“Davis”) became the Trustee of “The Irrevocable Raynold Saar Trust” (“Trust”) which owned various parcels of real estate in Davie, Florida.[1] On July 10, 1985, Davis entered into a Net Ground 99-year Lease Agreement (“Lease”) with Frontier Realty Services, Inc. (“Frontier”), with respect to 17.42 acres of Trust property. Frontier intended to either sublease or develop the property commercially, and any improvements were to be constructed at Frontier’s expense.
The Lease provided Frontier with an option to purchase at the end of the twenty-first year. The Lease specifically provided for the “Manner of Exercise of the Option to Purchase.” It also provided Frontier with an unrestricted right to assign its rights and interests under the Lease. On October 20, 1986, a Memorandum of Lease was recorded in the public records.
On February 16, 1987, Frontier entered into a Long Term Ground Sublease Agreement (“Sublease”) with Chrysler subletting six of the 17.42 acres. The Sublease pro *905 vided for an initial term of twenty-five years with seven consecutive options to renew, each for a term of ten years. Chrysler constructed an automobile dealership on the property at its expense.
The Sublease included a provision giving Chrysler the option to purchase “under the same terms and conditions in the 21st year of the lease or at the time the Lessor [Frontier] has opportunity to exercise its option to purchase under its lease.” It also gave Chrysler a right of first refusal to purchase the premises. The Memorandum of Lease recorded at the time of the Sublease contained reference to the right of first refusal.
Davis signed the Sublease acknowledging that he received and' reviewed a copy of it. His signature appears right below the option to purchase. At the same time, he executed a Non-Disturbance Agreement (“NDA”) with Frontier and Chrysler. It provided:
If the Prime Lease shall terminate, the Sublease, if then in existence, shall continue with the same force .and effect as if the Landlord as Lessor and the Subtenant as Lessee had entered into a lease for a term equal to the then unexpired term of the Sublease, as of the termination of the Prime Lease, containing the same terms, covenants and conditions as those contained in the Sublease, including the rights of renewal therein and further, Landlord shall not, in the exercise of any of the rights arising or which may arise out of the Prime Lease or of any Instrument modifying or amending the same or entered into in substitution or replacement thereof, disturb or deprive Subtenant in, or of, its possession or its right to possession of the premises demised under the Sublease or of any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease, provided the Sublease is then in full force and effect.
The NDA contained a specific attornment provision, which stated that if the Lease terminated, “[t]he Subtenant will attorn as Tenant to the Landlord, and the Landlord will accept such attornment.” A Memorandum of Sublease was recorded in the public records on February 16, 1987.
Frontier defaulted on the Lease in 1988. Chrysler filed suit against Frontier and Davis. Davis filed a cross-claim against Frontier for breach of the Lease. On September 11, 1989, the court entered an order on Davis’s Motion for Entry of Judgment After Default, which specifically determined that the Lease was terminated as a result of Frontier’s material breach of its terms and conditions, and that Frontier no longer had any right, title or interest in the property by virtue of the Lease. With respect to Chrysler, the order provided:
Nothing in the relief hereinbefore granted to the Crossclaimant, MICHAEL K. DAVIS, Trustee, against the Crossde-fendant, FRONTIER REALTY SERVICES, INC., shall invalidate or amend the lease-hold rights of Plaintiff in Inter-pleader, CHRYSLER REALTY CORPORATION, by virtue of that certain Sublease dated February 16, 1987, the rights whereof the Defendant, 'MICHAEL K. DAVIS, Trustee, has agreed to recognize upon the performance of obligations thereof pursuant to Non-Disturbance Agreement also dated the 16th of February, 1987, which the said MICHAEL K. DAVIS, Trustee, acknowledges to be in full force and effect at the time of these proceedings.
On April 26, 1990, Davis and Chrysler executed a document entitled “First Amendment to Long Term Ground Sublease Agreement.” It stated, “[p]ursuant to the Order [of September 11, 1989], Landlord agreed to recognize the rights of *906 Tenant under the Sublease.It further provided, “4. Landlord ratifies that he is the Landlord under the Sublease, bound by all of its terms and conditions.... 6. Except as amended herein, all terms and conditions of the [Long Term] Sublease are and shall remain in full force and effect.”
On December 25,1995, Davis, individually and as Trustee, executed a warranty deed in favor of defendants, William D. Seidle, Betty Seidle, Robert K. Seidle, and Michael A. Seidle, for approximately 11.42 acres of Trust property that had previously been leased to Frontier, but not the six acres sublet to Chrysler. Davis executed the deed without notifying Chrysler. That warranty deed was subject to restrictions of record.
On April 14, 1999, Davis executed a Quit Claim Deed in Lieu of Foreclosure for a forty-acre parcel of Trust property, which included the six acres sublet to Chrysler. The deed stated that Schumacker Holdings, L.L.C., took title subject to “[r]estrie-tions and easements of record.” The quit claim deed was executed without notice to Chrysler. Approximately two years later, Davis executed a corrected quit claim deed identifying J.P. Schumacker Holdings of Florida, L.L.C. as grantee even though the Trust was no longer in existence.
Chrysler filed the current complaint against Davis, the Seidles, and Joseph P. Schumacker, individually and as Schu-maeker Holdings, L.L.C., alleging four counts for declaratory relief, specific performance of the right of first refusal, breach of contract, and to quiet title. The defendants filed motions for summary judgment contending that Chrysler’s option to purchase and right of first refusal expired with the termination of Frontier’s Lease.
The Seidles and Schumacker argued, and the trial court concluded, that Chrysler had no valid right of first refusal and no property interest other than its leasehold interest in the six-acre parcel. The court found “the best rights that Chrysler ever obtained was [sic] the rights that — that Frontier had and Frontier’s rights were extinguished” when Frontier defaulted. We disagree.
The parties are bound by the unambiguous terms of their contract. See Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347-48 (Fla.1977). One of the precatory clauses to the NDA provides, “WHEREAS the parties hereto desire to assure the Subtenant’s possession of its part of said lands upon the terms and conditions prescribed in the Sublease for the full balance of the term therein mentioned irrespective of a termination of the Prime Lease.... ” (Emphasis added). The plain language of the NDA demonstrates the intent to guarantee to the subtenant all rights it held under its lease, even if the Prime Lease terminated. One of the terms in the Sublease was the subtenant’s option to purchase, “under the same terms and conditions, in the 21st year or at the time the Lessor has opportunity to exercise its option to purchase under its lease.” Moreover, the Landlord also granted “to tenant during the initial term or any extension or renewal of this lease the right of first refusal to purchase the premises.”
The NDA provided that if the Prime Lease terminated, then the Sublease would continue “with the same force and effect as if the Landlord as Lessor and the Subtenant as Lessee had entered into a lease ... containing the same terms, covenants, and conditions as those contained in the Sublease .... ” (Emphasis added). Moreover, contrary to Davis’s contention that it only prevented him from depriving Chrysler of possession of the premises, the agreement *907 he signed also stated that “Landlord shall not ... disturb or deprive Subtenant in, or of ... any right or privilege granted to or inuring to the benefit of Subtenant under the Sublease.” The right of first refusal and option to purchase were rights and privileges under the Sublease.
Landlord Davis signed the Sublease, signed the NDA, and then signed the first amendment to the Lease, which stated that he agreed to recognize all of the rights of the Tenant under the Sublease and to be bound by all of its terms and conditions. If he had wanted to limit the terms for which he would be bound, he had ample opportunity to restrict Chrysler’s rights. He did nothing. The unambiguous terms of the contract, ratified several times by Davis, gave Chrysler a right of first refusal for the six acres and an option to purchase.
Through these agreements Davis obligated himself to fulfill the terms of the Sublease. See Cassidy v. Billy M. Corp., 365 So.2d 520, 524 (La.Ct.App.1978) (interpreting a non-disturbance agreement as establishing an “obligation of the owner to step into the shoes of the lessee, vis-a-vis the sublessee, in the event that the lease between the owner and the lessee falls” and stating, “[i]f and when this occurs, the conditions of the sublease then become binding upon the owner”). An analogous case is MTS Co. v. Taiga Corp., 365 N.W.2d 321 (Minn.Ct.App.1985). There, the prime landlord entered into a lease with the prime lessee. The lessee entered into a sublease with Taiga Corporation for the operation of a restaurant. The sublease specifically prohibited Taiga from selling alcohol. A restaurant lease was also executed between the lessee and Taiga which provided that the lessee would sell alcohol on the restaurant premises, as the lessee had a liquor license. MTS executed a non-disturbance agreement with Taiga, agreeing that in the event of the termination of the prime lease the subtenant’s rights and privileges under the sublease would not be disturbed or diminished. The lessee breached the prime lease, and the lease was terminated. Taiga then acquired the right to sell alcohol, and MTS sought to terminate the sublease because Taiga violated the prohibition against the sale of alcohol.
Finding that the lessee and sublessee had intended that the restaurant lease and the sublease be construed together as one indivisible' transaction, the court held that the non-disturbance agreement obligated MTS to perform the lessee’s obligations under both documents, including the sale of liquor. See 365 N.W.2d at 326. The court explained,
The source of MTS’s obligation to Taiga is the non-disturbance agreement; it is the only agreement directly between MTS and Taiga. The language in the non-disturbance agreement is quite clear: MTS agrees to step down to the sublessor’s position in the sublease upon Egbert Souse’s default, in effect transforming the sublease into a prime lease. Upon assuming Egbert Souse’s position as sublessor, the sublease defines the extent of MTS’s responsibility.
Id. at 325. Similarly, in this case the Landlord agreed to “step down into the shoes of the sublessor” and perform the duties and obligations required under the Lease. Therefore, Davis was obligated to fulfill the terms of the right of first refusal as well as the option to purchase.
As to the right of first refusal, the Sublease required the landlord to give Chrysler the right of first refusal as to any offer to purchase the premises, which was the six-acre parcel occupied by the automobile dealership. Therefore, the NDA, together with the First Amendment to - the ■ Lease, required Davis to honor this condition of *908 the Lease and give Chrysler the ability to exercise this right. We think it was a normal business decision to provide a right of first refusal to protect Chrysler’s substantial interest in the parcel. If, and when, Davis received an offer to sell, Chrysler would have the right of first refusal to purchase the six acres.
The Sublease gives the tenant the option to purchase under the same terms and conditions in the twenty-first year of the lease or “at the time the lessor has opportunity to exercise its option to purchase under its lease.” While the NDA provided that the landlord was bound by the terms of the Sublease, “landlord” meant only the current owner, i.e., Davis. See NDA § 4. In the event of a sale of the “premises,” comprised of the six-acre parcel, the landlord would be relieved of responsibility, but the provisions of the Sublease would bind any subsequent owner of the “premises.”
As to the remaining 11.42 acres which were part of the Prime Lease, the NDA did not bind the Seidles as subsequent purchasers of that parcel because they were never owners of the “premises,” 1.e., the six-acre parcel. Therefore, they are not bound by the terms of the option to purchase contained in the Sublease.[2]
Finally, we must determine whether an option to purchase the six acres continues under the Sublease. The Prime Lease conditioned Frontier’s option to purchase upon the following things being true in 2006, the end of the twenty-first year: (1) the Lease had not been terminated; (2) Frontier was not in default; and (3) Frontier had been and continued to pay rent on the 17.42 acre parcel. Because Frontier defaulted and the Lease terminated by virtue of the September 11, 1989 court order, none of those conditions were satisfied and Frontier’s option to purchase expired. As those conditions could not be satisfied, Davis argues that the option to purchase terminated with the default by Frontier.
But for the NDA, we would agree with Davis. However, that agreement was entered into specifically to assure Chrysler that its rights under the Sublease would be preserved “irrespective of the termination of the Prime Lease.” That being the case, he cannot now claim that Chrysler’s rights are invalid specifically because of the termination of the Prime Lease. Just as in MTS, the terms of the Sublease, not the Lease, define the extent of Davis’s responsibility, and the NDA also binds Schu-macker, as subsequent owner of the premises.
Davis argues that he. is deprived of the full benefit of the Prime Lease conditions on the exercise of the option to purchase, because the rental payments by Frontier were considered part of the purchase price. Davis loses nothing because he has received all of the rental payments from Chrysler for the six-acre premises which are subject to the option to purchase. By his own admission those payments constituted at least two-thirds of the rentals due under the Prime Lease. Thus, Davis has received the full rental on the six-acre parcel, and the monetary condition to exercise the option as to the premises has been met.
We therefore affirm the final judgment as to the declaration that the Seidles are not bound by an option to purchase their property. We reverse the final summary *909 judgment in favor of appellees Davis and Schumacker. While we have concluded that the NDA entitles Chrysler to the rights under the option and right of first refusal as to the six-acre parcel, there remain many affirmative defenses raised which have not been adjudicated. Thus, we remand for further proceedings on all other issues. By our rulings determining Chrysler’s rights in the property, we also reverse the final judgment quieting title as to Schumacker.
GUNTHER, J., concurs.
MAY, J., dissents with opinion.

. Davis is referred to in his capacity as Trustee unless otherwise indicated. Chrysler subleased the six-acre parcel to University Dodge, Inc.

. We recognize that this argument was not advanced by the parties in the trial court or on appeal but the “tipsy coachman” doctrine allows us to affirm if the judgment is legally correct, regardless of the reasoning of the trial court. See State Farm Fire & Cas. Co. v. Levine, 837 So.2d 363, 365 (Fla.2002).