EMAS, J.
MV Insurance Consultants, LLC (“MV”), Dadeland Financial Associates, Inc.[1] (“Dadeland”), Maribel Viego Argo-maniz, and Alberto Argomaniz (collectively “Appellants”) appeal a non-final order denying their motion to compel arbitration. For the reasons that follow, we reverse with directions to the trial court to compel arbitration as to Counts I, II, V and VII of the Complaint.

FACTS AND BACKGROUND

Plaintiff/Appellee NAFH National Bank (“NAFH”), the successor in interest to Metrobank of Dade County, filed a seven-count complaint against Appellants arising from MV’s alleged failure to make principal and interest payments on a commercial loan. Six of the seven counts seek relief arising out of a series of loan documents executed on October 22, 2007: Breach of a Promissory Note (Count I); Foreclosure of a Security Agreement (Count II); Breach of a Collateral Assignment of Agency Agreement (Count III); Breach of a Commission Payment Agreement (Count IV); Breach of a Security Interest and Collateral Assignment of Termination Payments and Economic Interests (Count V); and Breach of a Guaranty (Count VII).[2]
Appellants responded to the Complaint with a Motion to Compel Arbitration, based on the following provision contained in the Collateral Assignment of Termination Payments and Economic Interests Agreement:
ARBITRATION: Any controversy or dispute arising out of or relating to this Agreement or to any portion thereof shall be settled by arbitration in accordance with the Rules of the American Arbitration Association_and judgment upon the award of the Arbitration shall be binding upon parties hereto and may be entered into any court having jurisdiction thereof, all rights to appear and review being hereby waived by all parties.
At the hearing on Appellants’ motion, the trial court denied the Motion to Compel Arbitration.[3] We review the issue de novo. Roth v. Cohen, 941 So.2d 496 (Fla. 3d DCA 2006).

ANALYSIS

Three elements must be considered in ruling on a motion to compel arbitration: “(1) whether a valid arbitration agreement exists; (2) whether an arbitra-ble issue exists; and (3) whether the right to arbitration was waived.” Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Whether an arbitration clause requires arbitration of a particular dispute depends on the intent of the parties to the contract. Id.
It is well-established that Florida law and public policy strongly favors arbitration, and courts are encouraged to resolve all doubts in favor of arbitration. Boston Bank of Commerce v. Morejon, 786 So.2d 1245 (Fla. 3d DCA 2001). However, in determining whether the parties have agreed to arbitrate a particular dispute, arbitration provisions are to be construed following general principles of contract interpretation, Idearc Media Corp. v. M.R. *99 Friedman & G.A. Friedman, P.A., 985 So.2d 1159, 1161 (Fla. 3d DCA 2008), and no party may be forced to submit a dispute to arbitration if the parties did not intend and agree to arbitrate that dispute. Pacemaker Corp. v. Aaron T. Euster, 357 So.2d 208, 211 (Fla. 3d DCA 1978). Thus, the determination of whether a particular dispute is subject to an arbitration provision “necessarily ‘rests on the intent of the parties.’ ” Seifert, 750 So.2d at 636 (quoting Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1348 (11th Cir. 1982)).

Count V: Collateral Assignment of Termination Payments and Economic Interests

In view of the foregoing law and in light of the arbitration provision at issue, there can be no question that the parties expressly intended and agreed to arbitrate “any controversy or dispute arising out of, or relating to” the Collateral Assignment of Termination Payments and Economic Interests. Count V of the complaint alleges a breach of this Agreement and the trial court erred in denying the motion to compel arbitration as to Count V.

Count I (Promissory Note), Count II (Security Agreement) and Count VII (Guaranty)

The remaining question is whether the parties intended and agreed that the arbitration provision in the Collateral Assignment of Termination Payments and Economic Interests would apply to the other loan documents executed on the same day and regarding the same loan transaction, which form the basis for Count I (Promissory Note), Count II (Collateral Assignment of Agency Agreement) and Count VII (Guaranty).
It is first observed:
Documents executed by the same parties, on or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract. Where a writing expressly refers to and sufficiently describes another document, the other document, or so much of it as is referred to, is to be interpreted as part of the writing.
Quix Snaxx, Inc. v. Sorensen, 710 So.2d 152, 153 (Fla. 3d DCA 1998).
It is undisputed that all of the relevant loan documents were executed contemporaneously, are interconnected, and relate to the same transaction — the $750,000 loan by NAFH to MV. Thus, we construe the documents as a single contract. Reviewing all of the relevant loan documents as a single contract, we conclude that the parties evidenced an intent that the arbitration provision contained in the Collateral Assignment of Termination Payments and Economic Interests would apply to the Promissory Note (Count I), Security Agreement (Count II), and Guaranty (Count VII).
The Collateral Assignment of Termination Payments and Economic Interests Agreement (the document containing the arbitration provision) makes specific reference to the $720,000 loan and the Promissory Note, and provides that the Security Interest and Collateral Assignment of Termination Payments and Economic Interests agreement is entered into “in consideration of the loan and Note.” It further provides:
Upon [MV]’s breach or default of any of it’s (sic) duties and obligations under the [Promissory] Note or any other loan document executed by MV in connection with loan transaction referred to above, Bank shall have all of the rights and *100 remedies available to it under this Assignment or under law....
The Promissory Note provides:
This Note, with interest, is secured by all collateral more particularly set forth in that certain Security Agreement of even date herewith executed and delivered by [MV] in favor of [NAFH]. This Note is subject to the terms and conditions contained therein, as well as in that certain Letter Agreement dated October 11, 2007, as amended, and is further subject to the terms and conditions of any other loan documentation executed in connection therewith, and a default under any of the foregoing shall constitute a default hereunder, and shall entitle [NAFH] to exercise any and all of its rights and remedies as provided for herein.
The Security Agreement provides:
[NAFH] has agreed to make certain loans and extensions of credit (the “Loan”) in favor of MV, to be evidenced by a promissory note of even date herewith, executed and delivered by [MV] in favor of [NAFH] in the original principal amount of $720,000 (the “Note”).
All of the rights, powers, remedies and privileges of [NAFH] in the event of default by [MV], as provided under this Agreement and under applicable law ... shall be cumulative and in addition one to the other, and in addition to those rights, powers, remedies and privileges afforded [NAFH] under the provisions of any promissory note or other document contemplated with this Agreement, or in connection with any other Agreement by and between [MV] and [NAFH],
The provisions of this Agreement are cumulative to the provisions of any indebtedness and any note or other writing evidencing any liability secured hereby, and NAFH shall have all the benefits, rights, and remedies of and under any indebtedness and any note or other writing evidencing any indebtedness secured hereby.
The Collateral Assignment of Agency Agreement provides:
[I]n the event of any default in the due observance or performance of any covenant, agreement or other provision hereof, or in any other documentation executed in connection herewith (collectively the “Loan Documentation”) ... [NAFH] may ... exercise any or all rights and remedies available to it under any other Loan Documentation.
The Guaranty provides:
In consideration of, and to induce METRO BANK OF DADE COUNTY ... to make or maintain loans, advances of money and extensions of credit in favor of MV ... [MARIBEL] ... and with full knowledge that BANK intends to rely hereon, hereby jointly and severally, unconditionally guarantees to the BANK and its successors and/or assigns, [MV’s] full and prompt payment when due ...
Appellee refers to the Collateral Assignment of Termination Payments and Economic Interests as a “collateral” loan document and cites to a number of cases for the proposition that a “collateral agreement” should not be construed as a part of the main contract if it has not been incorporated into those writings. See, e.g., LBC Design & Constr. v. Serruya, 57 So.3d 994 (Fla. 3d DCA 2011); Gen. Impact Glass & Windows Corp. v. Rollac Shutter of Tex., Inc., 8 So.3d 1165 (Fla. 3d DCA 2009); Temple Emanu-El of Greater Fort Lauderdale v. Tremarco Indus., Inc. 705 So.2d 983 (Fla. 4th DCA 1998). However, a closer review of these cases reveals that they all share one thing in common: the collateral document or agreement to which they refer is deemed “collateral” not because of its relative importance in the un *101 derlying transaction, but because it is a document that was not signed by both parties or attached to the agreement. General Impact, 8 So.3d at 1167; LBC Design, 57 So.Sd at 995; Temple Emanu-El, 705 So.2d at 984.
Here, by contrast, the Collateral Assignment of Termination Payments and Economic Interests is not “collateral” in that sense. It was one of several loan documents executed by the parties on the same day and all directly relating to, and in consideration of, the $750,000 loan. Thus, although this document may not be as “primary” an agreement as, for example, the Promissory Note, it cannot reasonably be argued that it is a collateral document in the same manner as the collateral documents in General Impact, LBC Design, and Temple Emanu-El.

CONCLUSION

Because the parties evidenced an intent that the arbitration provision contained in the Collateral Assignment of Termination Payments and Economic Interests would apply to the Promissory Note (Count I), Security Agreement (Count II), and Guaranty (Count VII), we reverse with directions to the trial court to compel arbitration as to Counts I, II, V and VII of the Complaint.

. Dadeland Financial Associates, Inc. is the Managing Member of MV.

. The issues on appeal do not involve Count VI of the Complaint.

.Appellants also moved to dismiss the complaint and the trial court granted the motion as to Counts III and IV, with leave to amend. We therefore address the arbitration issue as it relates to the remaining counts, I, II, V and VII.