# Third District Court of Appeal

## State of Florida

Opinion filed October 26, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-40
Lower Tribunal No. 18-28360
_____

**Anne-Sophie Gonthiez Mavroleon, etc.,**
Appellant,

vs.

**Fernando Orrego,**
**and OC Estate and Elder Law, P.A.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Rodriguez Tramont & Núñez, P.A., Paulino A. Núñez Jr., and Frank R. Rodriguez, for appellant.

BeharBehar, and Jaclyn Ann Behar (Sunrise), for appellees.

Before EMAS, LINDSEY and GORDO, JJ.

GORDO, J.

Anne-Sophie Gonthiez Mavroleon, individually and as trustee of the Nicholas Mace Mavroleon 17 Special Needs Trust, ("Mavroleon") appeals a trial court order granting Fernando Orrego ("Orrego") and OC Estate and Elder Law, P.A.'s ("the Firm") motion to compel arbitration and stay the proceedings. We have jurisdiction. Fla. R. App. P. 9.130(a)(3)(C)(iv). Because Mavroleon's claim is subject to the arbitration clause in the retainer agreement, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2017, Mavroleon entered into a retainer agreement with Orrego and the Firm. Per the terms of the retainer agreement, Mavroleon retained Orrego and the Firm to represent and advise her on certain estate planning matters including the preparation of a special needs trust established for the benefit of Mavroleon's disabled adult son. The retainer agreement contains the following arbitration clause:

> **ARBITRATION; FLORIDA LAW APPLIES:** In the event we cannot, in good faith, arrive at a resolution of **any dispute, then any controversy or claim arising out of or relating to this agreement or your representation by OC Estate & Elder Law, PA shall be settled by arbitration** in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered of record in any court having proper jurisdiction. The locale of the arbitration shall be Plantation, Florida. If OC Estate & Elder Law, PA is

2

required to give testimony through its attorneys and/or other employees, or if OC Estate & Elder Law, PA is required to produce documents or provide other discovery or testimony concerning our representation of you, you agree to pay the time and expenses incurred by this firm in responding to such requests for testimony or other discovery. This agreement shall be governed by the laws of the State of Florida.

(emphasis added).

In April 2019, Mavroleon filed her second amended complaint against Danilo Gomez, FIP, LLC, Future Income Payments, LLC, Scott Kohn, Faw, Casson & Co., LLP. d/b/a/ Faw Casson Agee Fisher Barrett, LLC, Global Capital Ins. and Financial Servs., Inc., Glorilyn Cusi, Orrego and the Firm. The case arose from an alleged nationwide Ponzi scheme carried out by FIP, LLC, Future Income Payments, LLC and their principal Scott Kohn ("the FIP parties"). Mavroleon was a victim of their alleged scheme as she entered into three contracts with the FIP parties. The first two contracts were entered into by Mavroleon as an individual prior to her executing the retainer agreement with Orrego and the Firm. The third contract was entered into by Mavroleon as trustee for the Trust after she engaged Orrego and the Firm.

In her second amended complaint, Mavroleon raised a sole claim for legal malpractice against Orrego and the Firm. Mavroleon alleged Orrego and the Firm, who represented her in her capacity as trustee, committed

3

legal malpractice by failing to conduct due diligence when rendering legal advice and counsel to the Trust with respect to the Trust's contemplated purchase of the FIP products. She alleges but for Orrego and the Firm's negligence she would not have entered into the FIP contract. Mavroleon does not contend Orrego or the Firm were in any way involved in the fraudulent scheme perpetrated by the FIP parties.

Orrego and the Firm moved to compel arbitration, asserting the retainer agreement signed by the parties contained a binding arbitration clause. Mavroleon filed a response in opposition arguing: (1) the arbitration clause did not apply to her claim and (2) if the arbitration clause was construed in the manner Orrego and the Firm intended, then the clause was contrary to public policy and therefore void.

On November 19, 2021, the trial court held a hearing on the motion and subsequently entered an order granting the motion to compel arbitration. This appeal followed.

## LEGAL ANALYSIS

An order granting a motion to compel arbitration is reviewed de novo. See Yam Exp. & Imp. LLC, v. Nicaragua Tobacco Imports, Inc., 298 So. 3d 1173, 1175 (Fla. 3d DCA 2020). When ruling on a motion to compel arbitration courts must consider three elements: "(1) whether a valid written

agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). In this case, only the second element is implicated, as there is no dispute an arbitration agreement exists. Thus, the sole issue on appeal is whether Mavroleon's malpractice claim against Orrego and the Firm is arbitrable under the retainer agreement's arbitration clause.

Mavroleon contends the arbitration clause does not apply to her claim because the retainer agreement contains a provision which expressly excludes advice regarding financial products from its scope. The relevant provision provides:

> **LEGAL WORK ONLY:** OC Estate & Elder Law, PA has agreed in this contract **to provide you with legal services only**. You have been advised of the advantages and disadvantages, if any, of having the legal documents listed on page one of this contract prepared, and this law firm has agreed to prepare such documents at a stated fee. **The attorneys at this law firm are not financial planners, investment advisors**, insurance agents or money managers. You are free to invest your money and property in any way you see fit, **and this law firm and its attorneys make no representations or warranties as to the financial products or services which may be purchased by you** as a part of your overall estate plan. You are advised to research as best as you can the financial strength and viability of any company whose products you purchase.

5

(emphasis added). Mavroleon contends this language establishes that financial advice is outside the scope of the Firm's representation, and therefore her malpractice claim arising from the Trust's purchase of financial products is not subject to the arbitration clause contained in the retainer agreement.

"[R]etainer agreements are construed against the attorney and in favor of client." Vargas v. Schweitzer-Ramras, 878 So. 2d 415, 417 (Fla. 3d DCA 2004). This, however, does not mean the Court is free to ignore the plain and unambiguous language of a retainer agreement. Here, the plain language of the retainer agreement's arbitration clause establishes that "any controversy or claim arising out of or relating to this agreement or [Mavroleon's] representation by [the Firm] shall be settled by arbitration." While the retainer agreement does state the Firm makes no warranties regarding financial products, Mavroleon's malpractice claim outright arises from Orrego and the Firm's representation of her. Thus, the arbitration clause is applicable to Mavroleon's claim. See Lemos v. Sessa, 319 So. 3d 135, 141 (Fla. 3d DCA 2021) (finding an appellant's claim was governed by the retainer agreement's arbitration clause where the claim bore a significant relationship to the parties' retainer agreement).

Mavroleon further asserts the arbitration clause violates public policy because it improperly limits her liability for malpractice claims. While an arbitration agreement may not preemptively limit a client's liability by requiring them to pay all costs associated with the arbitration—here, the language in the arbitration clause merely requires Mavroleon to bear all discovery costs associated with her own discovery requests. See Lemos, 319 So. 3d at 141–42. This imposition does not de facto limit liability or create a barrier to Mavroleon seeking recourse.

While courts generally favor arbitration provisions, we note Floridians have a constitutional right to access the courts. See Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."). Thus, it is well-settled Florida law that no party should be forced to submit a dispute to arbitration where they did not intend and agree to arbitrate that dispute. See MV Ins. Consultants v. NAFH Nat. Bank, 87 So. 3d 96, 98–99 (Fla. 3d DCA 2012).

Florida courts, however, will enforce the terms of contracts that are knowingly and voluntarily executed because Floridians have a right to secure their own destiny and a right to expect that their lawfully enacted contracts will be enforced. See Chiles v. United Faculty of Fla., 615 So. 2d 671, 673

7

(Fla. 1993) ("The right to contract is one of the most sacrosanct rights guaranteed by our fundamental law."); Allied Van Lines, Inc. v. Bratton, 351 So. 2d 344, 347 (Fla. 1977) ("It has long been held in Florida that one is bound by his contract."); Chrysler Realty Corp. v. Davis, 877 So. 2d 903, 906 (Fla. 4th DCA 2004) ("[P]arties are bound by the unambiguous terms of their contract."). Here, the retainer agreement expressly stated that any controversy or claim arising out of the agreement or the Firm's representation of Mavroleon was subject to arbitration. Those terms were clear. Public policy is certainly not violated by the trial court's ruling that the contractual arrangement reached between the parties be enforced. We therefore affirm.

Affirmed.