972 So.2d 962 (2008)
Glen IKALINA, Appellant,
v.
The CITY OF PEMBROKE PINES, Appellee.
No. 4D06-2411.
District Court of Appeal of Florida, Fourth District.
December 19, 2007.
Rehearing Denied February 22, 2008.
*963 David B. Pakula of David B. Pakula, P.A., Pembroke Pines, for appellant.
Carlos E. Mustelier, Jr. of Boyd Mustelier Smith & Parker, P.L., Miami, for appellee.
WARNER, J.
When a police officer of the City filed suit against the City for breach of an agreement reached in an arbitration proceeding between the City and the officer, the trial court referred the matter back to the arbitrator. The arbitrator determined that the City had not breached its contract. Based upon the arbitrator's determinations, the court dismissed the officer's suit. He appeals claiming that the matter was not properly referred to the arbitrator and the arbitrator exceeded his authority in determining the issue before him. We disagree and affirm.
Glen Ikalina, a policeman with the City of Pembroke Pines, was suspended by the City and sought arbitration through his union's grievance procedures. The parties agreed to a settlement on February 11, 2004, in which Ikalina agreed to retire. Specifically, the agreement provided:
Grievant/Employee will retire in good standing on April 16, 2004 subject to all other provisions of this agreement. Upon his retirement Grievant/Employee will receive all standard/normal retirement benefits that any other police department employee receives and will be entitled to use his existing leave accruals and the City will contribute the difference so that Grievant/Employee will have 1,000 hours accrued leave to cash in for pension purposes.
3.0 Beginning on February 12, 2004, Grievant/Employee shall be placed on paid administrative leave with no reporting requirements by the City. Orrievant/Employee will continue to enjoy all benefits provided to all other Police Benevolent Association members on paid status, said leave to continue until his retirement date of April 16, 2004. However, if the CBA referenced in paragraph 6.0 and the new pension ordinance also mentioned in paragraph 6.0 are approved subsequent to April 16, 2004, Grievant/Employee will continue to receive the same until both the CBA and new pension ordinance are approved. Grievant/Employee shall turn in City issued equipment at the Police Department by February 12, 2004 at noon.
The agreement also provided that the arbitrator retained jurisdiction for purposes of carrying out the terms of the agreement.
On April 15, 2004, the day before Ikalina agreed to retire, he appeared before the Pension Board to apply for and request participation in the DROP Program. This program is available to active City *964 employees who have attained "normal retirement status" under section 34.43 of the City's code of ordinances. City of Pembroke Pines, Fla., Code of Ordinances § 34.43 (2004). Pursuant to section 34.52(C)(3), DROP participants may continue working for up to five years. During this period, the participants' pension payments are deposited into an interest bearing DROP account. § 34.52(C)(5). An individual's involvement in the DROP program terminates in four ways: when the participant either "[e]lects in writing . . . to cease participation," "realizes the maximum participation period," "[t]erminates his employment as a police officer or fire-fighter," or "[d]ies." § 34.52(C)(8)(a)-(d).
It is not clear from the record whether the Pension Board determined that Ikalina qualified for the DROP program. Nevertheless, because Ikalina retired pursuant to the terms of the settlement agreement on April 16th, the City claimed that he was no longer in its employ and his ability to participate terminated pursuant to § 34.52(C)(8).
Ikalina filed a complaint against the City alleging that it breached the settlement agreement by failing to provide him with normal retirement benefits. He also requested a declaratory judgment as to his rights. The City moved to dismiss the complaint and to refer it to the arbitrator who still retained jurisdiction over the settlement agreement. The court abated the action while the arbitrator considered the issue.
After receiving submissions from the parties, the arbitrator determined that the City had complied with the agreement. Specifically, the arbitrator found:
The parties complied with paragraph 2 of the Settlement Agreement requiring Ikalina to retire under the Normal Retirement provisions of the Pension Fund effective April 16, 2004, and thus end his employment as a City police officer effective April 17, 2004.
As intended by the parties and clearly stated in paragraph 2 of the Settlement Agreement, Ikalina retired and, thus, left the employ of the City. Moreover, under the Pension Plan's specific language pertaining to the DROP program, DROP terminates or ends when the police officer's employment ends. Thus, by Ikalina signing the Settlement Agreement, his last day of employment as a City police officer was April 16, 2004. It follows, accordingly, that after such date he was no longer eligible for DROP.
After the arbitrator ruled, the City renewed its motion to dismiss, which the trial court granted based upon the findings of the arbitrator. The court found that the arbitrator did not exceed his authority in ruling on the issue of compliance with the agreement. Ikalina appeals this ruling.
We hold that the court did not err in referring back to the arbitrator the matter of the interpretation of the settlement agreement and whether the parties properly carried out its terms. The settlement agreement specifically provided for the retention of jurisdiction by the arbitrator to carry out the terms of the settlement agreement. "[A]rbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation." Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Here, the arbitrator was asked to determine whether the City had properly carried out the terms of the settlement agreement when it refused to recognize Ikalina's continued right to work under DROP, when Ikalina had agreed to retire on April 16, 2004. This *965 was within the reserved jurisdiction of the arbitrator.
Ikalina makes a mistake when he claims that under the settlement agreement he was entitled to all benefits, including DROP, when he reached normal retirement status on April 16, 2004. The agreement did not provide this. It quite clearly provided that Ikalina would retire, and he would receive all of the benefits that retired officers would receive. There is a difference. When one retires, one stops working. Attaining retirement status does not necessarily require one to stop working; it merely means that the employee has attained the necessary requirements to retire (i.e., met the retirement requirements of the pension plan). The settlement agreement unambiguously requires Ikalina to actually retire and leave the employ of the City. The agreement provides that he was placed on administrative leave with no reporting requirements the day after the settlement agreement was signed. He was also required to turn in all of his City issued equipment. On its face, the agreement required Ikalina to retire. At that point he was no longer employed by the City and thus ineligible for benefits which require actual employment, as does DROP.
The question of whether the City was providing the appropriate benefits, including DROP, was a question of whether the City had properly carried out the terms of the agreement. The trial court did not err in adopting the arbitrator's findings and dismissing this case.
Affirmed.
GROSS, J., and CHUMBLEY, DOUGLAS J., Associate Judge, concur.