DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**UNITED STATES FIRE INSURANCE COMPANY,**
Appellant,

v.

**AMERICA WALKS AT PORT ST. LUCIE, LLC,**
Appellee.

No. 4D2023-1784

[May 15, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Brett M. Waronicki, Judge; L.T. Case No. 562023CA000035A.

Guy W. Harrison and Edward Etcheverry of Etcheverry Harrison, LLP, Fort Lauderdale, for appellant.

Theodore L. Tripp, Jr., and Meredith McBride of Hahn Loeser & Parks LLP, Fort Myers, for appellee.

GERBER, J.

The appellant surety, which had filed a declaratory judgment action in the circuit court against the appellee developer, appeals from the circuit court's order granting the developer's motion to compel the surety's declaratory judgment action to arbitration. The surety argues the circuit court erred in determining a valid arbitration agreement exists between the surety and the developer. The surety argues such a determination cannot be made until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer had validly terminated an underlying "prime contract" with its general contractor, and thus had validly accepted assignment of a "master subcontract" containing the arbitration agreement which the developer seeks to enforce.

We agree with the surety's argument. We therefore reverse the circuit court's order granting the developer's motion to compel the surety's declaratory judgment action to arbitration. We remand with directions to the circuit court to stay the surety's declaratory judgment action until, in the developer's earlier-filed arbitration action, the arbitrator determines

whether the developer validly accepted assignment of the "master subcontract," and thus whether a valid arbitration agreement exists between the developer and the surety.

### *Background*

*1. The Tangled Web of Contracts Involved in this Case*

The complicated nature of this appeal arises from the three interrelated contractual relationships underlying this case.

First, the developer and the general contractor ("the GC") entered into the "prime contract" for constructing a residential community project.

Second, the GC entered into a master subcontract and two job-specific subcontracts with a land development subcontractor ("the sub").

Third, the sub obtained performance bonds from the surety covering the two job-specific subcontracts. The performance bonds incorporate the two job-specific subcontracts by reference. The performance bonds also provide that if the sub defaults on its performance under either of the two job-specific subcontracts, the GC is owed the payment under the bonds.

Both the prime contract and the master subcontract provide that if the developer terminates the prime contract for cause, the developer may take assignment of the master subcontract from the GC upon the developer giving notice to the GC and the sub. Both the prime contract and the master subcontract also provide that upon the developer giving such notice, the developer would be owed payment under the surety's performance bonds.

Further complicating this case is that the prime contract, the master subcontract, and the performance bonds each provide for a different dispute resolution process.

The prime contract provides that any claim or dispute between the developer and the GC "arising out of or relating to" the prime contract shall be submitted to binding arbitration under the American Arbitration Association's ("AAA") Construction Industry Rules. A third party may be joined into such binding arbitration only with that third party's consent.

The master subcontract provides that, at the GC's sole discretion, any claim or dispute "arising out of, relating or and/or in any way connected with" the two job-specific subcontracts shall be resolved by binding

2

arbitration under the AAA's Construction Industry Rules. The master subcontract also provides the arbitrator shall decide "[a]ny disputes concerning the interpretation or the enforceability of th[e] [master subcontract's] arbitration agreement," including "the scope of arbitrable issues."

The surety's performance bonds do not contain an arbitration agreement. Instead, the performance bonds provide that "[a]ny proceeding, legal or equitable, under [the performance bonds] may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located." As stated above, the performance bonds also expressly incorporate the two job-specific subcontracts.

### 2. *The Dispute Leading to the Developer's Earlier-Filed Arbitration Action*

One day, the GC sent the developer a notice terminating the prime contract for cause, citing the developer's alleged nonpayment under the prime contract. Later that day, the developer sent the GC a notice terminating the prime contract for cause, citing the GC's alleged various breaches under the prime contract.

The next day, the developer notified the GC and the sub that the developer had terminated the prime contract and was accepting assignment of the master subcontract.

A few days later, the developer notified the surety that the sub was in default under the two job-specific subcontracts and, therefore, demanded the surety pay the developer under the surety's performance bonds.

The surety responded it needed to investigate whether the developer was a proper claimant under the performance bonds, and whether conditions precedent to asserting a claim under the performance bonds had been satisfied.

During the surety's investigation, the sub took the position that the developer did not have any payment rights under the performance bonds. The sub claimed the GC's termination of the prime contract—which had preceded the developer's purported termination of the prime contract later that day—had effectively terminated the two-job specific subcontracts, invalidated the bonds, and precluded the developer from accepting assignment of the master subcontract or replacing the GC as being owed payment under the bonds.

The developer then submitted to the AAA a demand for arbitration against the GC, the sub, and the surety. The developer's demand sought to enforce the arbitration agreements in both the prime contract and the master subcontract. The developer's demand also sought to recover damages for the GC's alleged breaches of the prime contract, the sub's alleged breaches of the two job-specific subcontracts, and the surety's non-payment under the performance bonds. The developer's demand further sought a declaratory judgment on three issues: (1) whether the GC's termination of the prime contract was improper; (2) whether the developer's termination of the prime contract for cause and acceptance of the master subcontract's assignment were valid; and (3) whether the surety owed payment to the developer under the performance bonds for the sub's alleged breaches of the two job-specific subcontracts.

### 3. Last But Not Least, the Surety's Circuit Court Declaratory Judgment Action, and the Developer's Motion to Compel that Action to Arbitration

The surety then filed, in the circuit court, a declaratory judgment action naming the developer as the sole defendant. The surety sought a declaratory judgment on three issues: (1) whether the developer was a proper claimant under the performance bonds, because the GC had terminated the prime contract before the developer had sought to do so, thus preventing the developer from accepting assignment of the master subcontract; (2) if the developer was a proper claimant under the performance bonds, whether the surety owed payment under the performance bonds because the developer had failed to satisfy conditions precedent to asserting a claim under the performance bonds; and (3) if no valid arbitration agreement existed between the surety and the developer, whether the developer's earlier-filed arbitration action had to be stayed against the surety.

In response to the surety's declaratory judgment action, the developer filed in the circuit court a motion to compel the surety's declaratory judgment action to arbitration, pursuant to the master subcontract's arbitration agreement. The developer argued it could enforce the master subcontract's arbitration agreement because the developer, after terminating the prime contract for cause, had accepted assignment of the master subcontract. The developer also argued even though the performance bonds facially provided that disputes arising under the performance bonds must be resolved in court, the surety was bound by the master subcontract's arbitration agreement, because the performance bonds incorporated the two job-specific subcontracts.

4

Addressing the surety's requested issues for the circuit court's declaratory judgment consideration, the developer argued whether it had validly terminated the prime contract, and thus had validly accepted the master subcontract's assignment, should be determined in the developer's earlier-filed arbitration action. According to the developer, allowing that issue to be relitigated in the surety's later-filed declaratory judgment action would risk inconsistent outcomes. Thus, the developer argued, the circuit court should compel the surety to litigate that issue in the developer's earlier-filed arbitration action.

In reply, the surety argued the circuit court, not the arbitrator, should determine whether a valid arbitration agreement exists between the surety and the developer. The surety argued the circuit court could not determine that issue until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer had validly terminated the prime contract, and thus had validly accepted assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce. According to the surety, unless and until the arbitrator makes that determination in the developer's favor, no arbitration agreement exists between the surety and the developer.

Alternatively, the surety argued even if a valid arbitration agreement exists between the surety and the developer under the master subcontract, the first two issues for which the surety sought the circuit court's declaratory judgment—whether the developer was a proper claimant under the performance bonds, and whether the developer had failed to satisfy conditions precedent to asserting a claim under the performance bonds—were not arbitrable. According to the surety, those two issues arose under the performance bonds which, as stated above, provide that "[a]ny proceeding, legal or equitable, under [the performance bonds] may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located."

At the end of a non-evidentiary hearing, the circuit court orally granted the developer's motion to compel the surety's declaratory judgment action to arbitration. The circuit court found a valid arbitration agreement exists between the surety and the developer, because the surety's performance bonds incorporated the prime contract, which contained an arbitration agreement. According to the circuit court, the performance bonds incorporated "the construction contract" and not "the subcontract[s] only."

After the hearing, the circuit court entered a written order granting the developer's motion to compel the surety's declaratory judgment action to arbitration and staying the action pending the arbitration's outcome. The

written order deferred to the arbitrator's determination whether the surety's defenses to payment under the performance bonds were arbitrable.

### *This Appeal*

This appeal followed. The surety argues the circuit court erred in determining a valid arbitration agreement exists between the surety and the developer. The surety argues such a determination cannot be made until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer had validly terminated the prime contract, and thus had validly accepted assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce.

The developer responds the circuit court properly determined a valid arbitration agreement exists between the surety and the developer. However, the developer's response does not rely upon the circuit court's stated basis that the surety's performance bonds incorporated *the prime contract*, which contains an arbitration agreement. Instead, the developer relies upon the performance bonds having incorporated *the master subcontract*, which contains its own arbitration agreement.

Our review is de novo. *See Dewees v. Johnson*, 329 So. 3d 765, 769 (Fla. 4th DCA 2021) ("An order granting or denying a motion to compel arbitration is reviewed *de novo* when it presents a pure question of law.") (citation and internal quotation marks omitted).

Applying de novo review, we agree with the surety's argument that a determination of whether a valid arbitration agreement exists between the surety and the developer cannot be made until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer had validly terminated the prime contract, and thus had validly accepted assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce.

A court reviewing a motion to compel arbitration must consider three elements: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to compel arbitration has been waived. *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999).

Generally, the court, rather than the arbitrator, determines whether a valid arbitration agreement exists between the parties and whether their

dispute is within the scope of the agreement.  *See* § 682.02(2), Fla. Stat. (2022) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 471 (Fla. 2011) ("[T]his Court in *Seifert* held that it was for the court, not the arbitrator, to determine whether a valid written agreement to arbitrate exists[.]") (citation and internal quotation marks omitted).

However, the parties' agreement may allow the arbitrator, rather than the court, to decide those issues.  *See Airbnb, Inc. v. Doe*, 336 So. 3d 698, 703 (Fla. 2022) ("The United States Supreme Court has 'recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)) (other internal quotation marks omitted).

Here, the master subcontract's arbitration agreement, in two respects, plainly delegates arbitrability determinations to an arbitrator.  First, the agreement expressly incorporates the AAA's Construction Industry Rules, which expressly delegate arbitrability determinations to an arbitrator.  *See Airbnb*, 336 So. 3d at 704 ("[I]ncorporation by reference of the AAA Rules that expressly delegate arbitrability determinations to an arbitrator clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability.").  Second, the agreement states an arbitrator shall  decide "[a]ny disputes concerning the interpretation or the enforceability of th[e] [master subcontract's] arbitration agreement," including "the scope of arbitrable issues."

Thus, the circuit court erred in determining a valid arbitration agreement exists between the surety and the developer, rather than deferring that determination to the arbitrator.  Further, as the surety argues, such a determination cannot be made until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer had validly terminated the prime contract, and thus had validly accepted assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce.

If the arbitrator in the developer's earlier-filed arbitration action determines the developer *did not* validly terminate the prime contract, and thus *could not* validly accept assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce, then it logically follows the arbitrator will determine the master

7

subcontract's arbitration agreement *cannot* serve as a valid arbitration agreement between the surety and the developer.

Conversely, if the arbitrator in the developer's earlier-filed arbitration action determines the developer *validly* terminated the prime contract, and thus *validly* accepted assignment of the master subcontract containing the arbitration agreement which the developer seeks to enforce, then it logically follows the arbitrator will determine the master subcontract's arbitration agreement *can* serve as a valid arbitration agreement between the surety and the developer.

The developer misplaces its reliance on several cases holding that when a surety's performance bond incorporates an underlying contract containing an arbitration agreement, the surety will be bound to that arbitration agreement. *See St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel No. 5*, 545 So. 2d 958, 958-59 (Fla. 4th DCA 1989); *Henderson Inv. Corp. v. Int'l Fid. Ins. Co.*, 575 So. 2d 770, 772 (Fla. 5th DCA 1991); *Argonaut Ins. Co. v. Collage Design & Constr. Grp., Inc.*, No. 6:22-CV-1055-RBD-DAB, 2022 WL 4485962, at *4-7 (M.D. Fla. Sept. 12, 2022), *adopted*, 2022 WL 4483711 (M.D. Fla. Sept. 27, 2022).

The developer's reliance on those cases is misplaced because, in those cases, no dispute existed that the party seeking to enforce the contract's arbitration agreement was a party to the contract. *See Woolley/Sweeney*, 545 So. 2d at 958-59; *Henderson*, 575 So. 2d at 771; *Argonaut*, 2022 WL 4485962, at *1-2.

Here, however, the developer seeks to enforce the master subcontract's arbitration agreement even though, in the developer's earlier-filed arbitration action, the arbitrator has yet to determine whether the developer validly terminated the prime contract, and thus validly accepted assignment of the master subcontract. Unless and until the arbitrator makes those determinations in the developer's favor, the developer is not a party to the master subcontract and has no basis to seek to enforce the arbitration agreement against the surety.

## *Conclusion*

Based on the foregoing, we reverse the circuit court's order granting the developer's motion to compel the surety's circuit court declaratory judgment action to arbitration. We remand with directions to the circuit court to stay the surety's declaratory judgment action until, in the developer's earlier-filed arbitration action, the arbitrator determines whether the developer validly accepted assignment of the master

subcontract, and thus whether a valid arbitration agreement exists between the developer and the surety.

*Reversed and remanded with directions.*

MAY and CONNER, JJ., concur.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**